## The Boston Water Power Company *versus* The Boston and Worcester Rail Road Corporation *et al.*

A corporation was empowered by its charter, to build a dam westerly from Boston to Brookline, over an arm of the sea, and from this main dam to run a cross dam southerly to the shore, so as to make on one side of the cross dam a full basin and on the other an empty or receiving basin, and to cut raceways from the full basin to the receiving basin, and to have the use of the land in the basins, derived partly from the Commonwealth and partly from individuals, either by purchase or by taking it for public use, at an appraisement ; and to use, sell or lease the water power thus created ; and the corporation built the dams accordingly and erected mills. It was *held*, that it was within the constitutional power of the legislature to authorize a rail road corporation to construct their road across the basins, making compensation to the water power corporation for the diminution and injury caused thereby to the water power.

*Held* also, that the grant of this authority to the rail road corporation could not be considered as annulling or destroying the franchise of the water power corporation; that the right of the water power corporation to use the land constituted an interest and qualified property therein not larger nor of a different nature from that acquired by a grant of land in fee, and did not necessarily withdraw it from a liability to which all lands in the Commonwealth are subject, to be taken for public use, for an equivalent, when in the opinion of the legislature the public exigency requires it ; and that the effect of the rail road act was merely to appropriate to another and distinct public use a portion of the land over which the franchise of the water power company was to be used.

If the whole of a franchise should become necessary for the public use, *it seems* that the right of eminent domain would authorize the legislature to take it, on payment of a full equivalent.

An act of the legislature, in the exercise of the right of eminent domain, appropriating to public use, on payment of a full equivalent, property or rights in the nature of property granted by the State to individuals, is not a law impairing the obligation of contracts, within the meaning of the constitution of the United States.

It was *held*, that the act authorizing the rail road is not liable to the objection that it does not provide for compensation for the damage done to the franchise of the water power corporation, for the franchise was not taken but only a portion of the land over which it extended, and for all damages occasioned by the taking of land the act makes provision.

The act empowered the rail road corporation to locate and construct a rail road " in or near the city of Boston and thence to any part of the town of Worcester, in such manner and form as they should deem expedient." It was *held*, that the act sufficiently declared the public necessity and convenience of the rail road and fixed the general *termini*, and that the delegation to the corporation, of the power to fix the precise *termini* and the intermediate course between them, and thus to take private property for public use, did not render the act unconstitutional and invalid.

Where a corporation was empowered by the legislature, in general terms, to locate and construct a rail road between certain *termini*, and between these *termini* lay an extensive tract of land already appropriated, under the authority of the legislature,

to a distinct public use, namely, for mill ponds, by another corporation, and this tract might be crossed by the rail road, with some diminution indeed of the mill power, and which might be compensated in damages, but without essential injury, it was considered that there was nothing in the nature of such public use, and in the extent to which it would be impaired or diminished, from which the power of constructing the rail road over it might be presumed to have been restrained by the legislature.

It was *held*, that if the water in the basins above mentioned was once a part of Charles river, it ceased to be so after it was effectually separated by the dam and rendered unfit for the general purposes of navigation ; and consequently, that a prohibition to the rail road corporation to build a bridge over the waters of Charles river connected with Boston or to place any obstruction therein, was not intended to apply to the basins, but only to the waters of Charles river below the dam and open to navigation, and was designed mainly to protect this navigation.

*Boston Water Power Co.*
*v.*
*Boston and Worcester Rail Road Corporation*

BILL in equity, filed in March, 1833, containing the follow ing allegations.

By *St.* 1814, *c.* 39, divers persons were incorporated by the name of the Boston and Roxbury Mill Corporation, and by that statute and those of 1816, *c.* 40, 1819, *c.* 65, and 1822, *c.* 34, the corporation was authorized to purchase and hold real and personal estate ; to build a dam from Charles street, at the westerly end of Beacon street, in Boston, wes- terly to Sewall's point, in Brookline, so as to exclude the tide water on the northerly side of the dam and form on the south- erly side a reservoir or receiving basin of the space between the dam and Boston Neck ; to build another dam from Grav- elly point, in Roxbury, to the dam first mentioned, so as to inclose the tide water within Tide-Mill creek, on the westerly side of this cross dam ; to cut any number of convenient race- ways from the full basin to the receiving basin ; to maintain and keep up all their works forever ; and to lease or sell the right of using the water, upon any terms and in any manner they might think proper ; and it was provided, that no other person should have a right to dispose of the water, without the consent of the corporation. The corporation was authorized to make over the main dam first mentioned a good and substan- tial road, and to receive toll for passing over it. Certain du- ties and obligations in favor of the public, set forth at large in the bill, were imposed upon the corporation, and certain pen- alties and forfeitures created to secure the performance of its undertakings. These acts were accepted by the corporation,

Boston Water Power Co.
v.
Boston and Worcester Rail Road Corporation.

whereby a contract conformable to the terms of the acts was created between the corporation and the Commonwealth.

This contract was performed on the part of the corporation, by the erection of the works required, being works of great magnitude and expense, and of great public convenience and utility ; and thereby the corporation became entitled to the exclusive right and privilege of forever using the soil included within the limits of the full basin, for the purpose of keeping it covered with water to the height and extent of surface to which the tide naturally flowed it, and the exclusive right and privilege of forever keeping the soil included within the limits of the receiving basin uncovered by the tide waters, and using it for a reservoir to receive and carry off the waters flowing from the full basin through the raceways cut, or which should thereafter be cut, through the cross dam, and the exclusive right and privilege of cutting raceways through any part of the cross dam, and of using or disposing, by lease or otherwise, of the water power thereby created.

The plaintiffs were incorporated by the name of the Boston Water Power Company, on June 12th, 1824, (*St.* 1824, *c.* 26,) with power to purchase and hold any quantity of the water power created by the establishment of the dams above mentioned, and by an indenture, dated May 9th, 1832, the Boston and Roxbury Mill Corporation transferred to them, for the sum of 175,000 dollars, all the grantors' right to the land above the main dam, and all the water power, and all their privileges, contracts, duties, and obligations respecting the water power ; and the plaintiffs thereby, so far as regards the water power, became entitled to the exclusive right and privilege of forever using the soil included within the two basins, for the purposes before mentioned, and to all the water power which can be and is created by the constructing and maintaining of the dams, without any hindrance, obstruction, interruption, or diminution of the capacity of the basins respectively.

The plaintiffs allege, that the Boston and Worcester Rail Road Corporation deny and disregard these vested rights, and threaten to build a rail road through the full basin, and over the cross dam, and through the receiving basin ; and have actually commenced building the same, by driving piles in both of the

basins ; and have taken for their road a strip of land twenty-six feet wide through the full basin, and five rods wide through the receiving basin.

Boston Wa-
ter Power
Co
v.
Boston and
Worcester
Rail Road
Corporation

The construction of the rail road through and across the two basins and cross dam will, it is alleged, greatly diminish the water power, and abridge the franchise vested in the plaintiffs, of using the soil and space between the main dam and Boston Neck for their basins, to their irreparable injury, and, so far as their rights are concerned, will be a nuisance.

The bill concludes with a prayer for a perpetual injunction and other relief.

The defendants filed an answer, in November 1835, in which they deny, that the Boston and Roxbury Mill Corpora tion have complied with certain essential conditions of their act of incorporation, and that the plaintiffs, as their successors, or assigns, are or ever were entitled to the exclusive right of forever using the soil included within the basins, for the purposes and to the extent set forth in the bill, or for any other purpose, or to any other extent ; and they allege, that the soil in the basins is and ever has been subject to the lawful rights of the proprietors of the lands bordering on and extending into the basins to use the same, and subject to the right of the Commonwealth to take any property for public use.   They deny that the several rights and privileges of the Boston and Roxbury Mill Corporation were ever so far perpetual and ex-clusive as to deprive or abridge the Commonwealth, or the legislature, of the right and power of taking or causing to be taken for public uses, the soil of the basins and dams, and any and all of the property, rights, privileges, and franchises of that corporation, or their assigns, making to the corporation, or their assigns, reasonable compensation therefor.

The defendants allege, that the legislature, prior to granting the charter to the Boston and Worcester Rail Road Corpora-tion, chose a board of directors of internal improvements, with authority to appoint engineers, whose duty it should be to ex-amine and survey routes for rail roads between Boston and the Hudson river, and between Boston and Providence, and that in January 1829, that board made a report of the doings of themselves, and of an engineer appointed by them, to the legis-

Boston Wa-
ter Power
Co.
v.
Boston and
Worcester
Rail Road
Corporation.

lature, stating the various routes which they recommended, accompanied with plans and estimates of the same, and that in this report they contemplated and referred, among other routes, to a route between Boston and Providence through these basins ; and that this report was accepted by the legislature, and, with the plans and estimates, was printed and published at the public expense ; that in consequence of the information thus disseminated, and of the belief that the construction of the rail road to Worcester would be of great public benefit, the original applicants for the charter of the Boston and Worcester Rail Road Corporation were induced to apply therefor ; that the legislature accordingly, on the 23d of June, 1831, passed an act establishing this corporation, and on March 22d, 1832, March 11th, 1833, March 28th and 31st, 1834, and April 8th, 1835, passed additional acts, all of which are made a part of the answer ; that by their act of incorporation, the rail road corportion were authorized and empowered to locate, construct, and finally complete a rail road in or near the city of Boston, and thence to any part of the town of Worcester, in such manner and form as they should deem to be most expedient, and for this purpose were authorized to lay out their road not exceeding five rods wide, through the whole length, and for the purpose of cutting embankments and procuring stone and gravel, to take as much more land as might be necessary for the proper construction and security of the road, provided that all damage that might be occasioned to any person or corporation by the taking of such land or materials for these purposes should be paid for by the rail road corporation, in the manner provided in the act ; and that by the seventh section, it was enacted, that the rail road corporation should be holden to pay all damages that might arise to any person or persons, corporation or corporations, by taking their land for the rail road, when it could not be obtained by voluntary agreement, to be estimated and recovered in the manner provided by law for the recovery of damages suffered by the laying out of highways ; and the defendants aver, that the property of the plaintiffs in the water power is comprehended under the term land ; and that in the additional act of March 11th, 1833, provision is made for compensating the owners of land or other property, or all

damages by them sustained by the construction of the rail road ; and that by a general law of March 26th, 1833, a similar provision is made for compensating owners of land or other property, for all damages by them sustained by the construction of any rail road.

They further state, that by the fifteenth section of the act incorporating the rail road corporation, it was provided, that nothing contained in the act should be construed as giving them authority to erect a bridge over the waters of Charles river, connected with the city of Boston.

They allege, that before the location of any part of the rail road, the act of incorporation and the additional acts were accepted by the persons incorporated, and they thereby became entitled to exercise all the powers, and enjoy all the rights granted therein ; that the corporation thereupon proceeded to survey a great variety of routes, and after a full view and consideration thereof, they were of opinion, that it was most expedient, on account of the public benefit and accommodation, to adopt the route which they have adopted, and that it was, in fact, for the public benefit that the road should pass in that direction, and that it was accordingly so located ; that about the 1st of May, 1833, they laid out and took as and for a part of their rail road, a strip of land running across the basins and cross dam, as by virtue of the authority granted to them they lawfully might do, and since the filing of the bill, they have completed and put in operation their rail road from Boston through and across the basins and cross dam to Worcester.

The defendants admit that two mills might be erected on the part of the cross dam taken for the rail road, but they allege that the plaintiffs have other mill sites more than sufficient for the employment of all the water power ; and they admit, that the driving of piles and laying of stones necessary for the support of the rail road, and making the embankment through and across the basins, must necessarily and directly, but not in any great degree, diminish the capacity of the basins, namely, by about one two hundredth part of the area of the basins ; but they allege, that the increase of the capacity by the excavations which the rail road corporation have made, is much greater than such diminution.

31 *

*Boston Water Power Co v. Boston and Worcester Rail Road Corporation*

Boston Water Power Co. *v.* Boston and Worcester Rail Road Corporation.

The defendants aver, that the rail road corporation have been always and are ready to pay the plaintiffs the full amount of damages which they have sustained, if they are entitled to any, and have attempted to agree with the plaintiffs in respect to the amount of such damages, but without success ; and that the plaintiffs have never applied to the county commissioners of Norfolk, or to the mayor and aldermen of Boston, as provided by law, for the purposes of having the damages ascertained.

The defendants deny, that the building of the rail road has operated, or can operate, as an irreparable damage to the plaintiffs, or is or will be in derogation of any of the lawfully vested rights of the plaintiffs, or is or will be in any way a nuisance to them.

The defendants deny, that the waters of the basins are a part of the waters of Charles river, connected with the city of Boston, according to the meaning and intent of the fifteenth section of the charter of the rail road corporation, but they aver, that they are tide waters separated and excluded from the waters of Charles river, and rendered innavigable by the main dam ; they aver, that the location and building of the rail road across the basins, is fully authorized by the general powers conferred by their act of incorporation, and not in any manner restricted or forbidden by any section or clause thereof, or of any subsequent act ; and that if such power and authority had not before been conferred, or was before restrained and prohibited, yet such power and authority were, by necessary implication, conferred upon the corporation by the act passed on the 31st of January, 1833, establishing the South Cove Corporation ; by which act, the South Cove Corporation were authorized and empowered to purchase and hold certain lands and flats, called the South Cove, and to take measures to procure the rail road from Worcester to be located on the same ; that a majority of the directors of the rail road corporation have at all times considered the route across the basins, and thence to deep water by the South Cove, as the most expedient that could be adopted, so far as the convenience and accommodation of the public was concerned, as well as for all other reasons except the expense thereof, and that while they were deliberating upon the relative expediency of the different routes,

they received a communication from persons residing in the south part of Boston, representing that it would be for the public interest that the rail road should terminate in that quarter, and that afterwards the South Cove Corporation and the rail road corporation made a compact, wherein it was agreed, that the South Cove Corporation should prepare a suitable termination and place of deposit for the rail road within the limits of the South Cove, and should pay the damages which should be sustained by the owners of lands and buildings lying between the receiving basin and the South Cove, by reason of building the rail road through and over the same, and should moreover pay to the rail road corporation $ 75,000, whereupon the rail road corporation determined to make its termination and place of deposit within the limits of the South Cove ; and the rail road corporation admit, that upon these inducements held out by the South Cove Corporation, which enabled them to do so, and because they believed it the most expedient route for the public use and accommodation, the rail road corporation located their road as above mentioned ; but they deny, that in consideration of those inducements, the rail road corporation did, without regard to the general public expediency in that behalf alter any course or direction before purposed for the rail road ; and the defendants further say, that in making this contract and in so locating the rail road, the rail road corporation were well warranted and authorized by their own act of incorporation ; but they further say, that in the charter of the South Cove Corporation such a contract and location were expressly authorized.

*C. G. Loring,* (with whom were *J. Mason* and *Gardiner,*) for the plaintiffs. By the exercise of the right of eminent domain, the soil in these basins, belonging in part to individuals, and in part to the Commonwealth, has been appropriated to the exclusive use of the plaintiffs' grantors, for the purpose of creating mill powers ; and a valid and binding contract was made between them and the Commonwealth, by which the perpetual enjoyment of the privileges thus granted has been secured. It is to be remarked, that the privileges and powers of the plaintiffs, and the territory in which they were to be exercised, have been *expressly defined* by the legislature ; and

*Boston Water Power Co.*

*v.*

*Boston and Worcester Rail Road Corporation.*

*June 18th to 22d, 1839.*

Boston Wa-
ter Power
Co.
v.
Boston and
Worcester
Rail Road
Corporation.
they have been fully recognized by this Court. *Boston and Roxbury Mill Corporation* v. *Newman,* 12 Pick. 467. But the charter of the rail road corporation confers a general power, not definite or precise as to the *termini* of the rail road, excepting by the exclusions provided in reference to Charles river, and there is no specific exercise of the right of eminent domain over any particular or described lands. Under this power the defendants have laid out and made their rail road through the basins, and confessedly, to a certain extent, impaired the plaintiffs' water power; thereby creating a nuisance, unless justified by law. And the question is, whether the law will warrant their proceedings.

That the right of using these lands for basins for the creation and maintenance of water power, is a franchise, cannot be questioned, the point having been judicially determined in a former stage of this case. 16 Pick. 512 ; 2 Bl. Comm. 37 ; 3 Kent's Comm. (3d edit.) 458. And it is to be observed, that the exercise of the right assumed by the defendants, goes to the existence of the whole franchise ; for if they may obstruct a portion of the basins, they or others may acquire like rights over the residue.

The plaintiffs contend, that the defendants had no right to locate and build their road across these basins in such manner as to lessen, injure or impair the water power, or any of the privileges or franchises held by the plaintiffs by virtue of legislative grants : —

1. Because the legislature cannot constitutionally destroy, nor essentially injure or impair, by a subsequent grant, a franchise which it had previously created, and thus in effect vacate its own contract ; and this, whether there be or be not a provision for compensation.

The principle upon which this position rests is, that the creation of a franchise, involving great expenditures, is a contract between the legislature and the corporators, which by the Constitution of U. S. *art.* 1, § 10, the legislature is prohibited to revoke or impair. That the grant of a charter is a contract, is well settled ; and the only question is, whether the right of eminent domain will extend to the abrogation or resumption of such franchise. No case has been found where this point has

been decided. The case of *Bradshaw v. Rogers*, 20 Johns. 103, 735, cannot be deemed an exception to this remark, for the point was not judicially before the court. The eminent domain belongs to the sovereign, the people, and not to the legislature, except so far as it is delegated by the people ; and by the constitution of the United States, that part of the eminent domain which consists in the power of vacating contracts, is expressly surrendered by the States. If it be asked what is to be done in cases of extreme necessity, as where land is required for a fortress, &c. the answer is, that such cases fall under the rule of self-preservation and make a law for themselves ; and further, that such cases, being of national concern, come within the power of the United States ; which are not restrained from abrogating a contract between a State and a citizen. Const. U. S., *5th art. of Amendments ; Chesapeake and Ohio Canal Co. v. Baltimore and Ohio Rail Road Co.* 4 Gill & Johns. 1; 108, 109, 144, 145, 165 ; *Enfield Bridge v. Connecticut River Co.* 7 Connect. R. 52 ; *Charles River Bridge v. Warren Bridge*, 7 Pick. 459, 494 ; *S. C.* 11 Peters, 577 ; *West Boston Bridge v. County Commissioners &c.*, 10 Pick. 272 ; *Wales v. Stetson*, 2 Mass. R. 146 ; *Dartmouth College v. Woodward*, 4 Wheaton, 628 ; *Terrett v. Taylor*, 9 Cranch, 52 ; *Day v. Stetson*, 8 Greenleaf, 369. It may be said that every franchise must be held subject to the right of eminent domain, in the same manner as land granted by the legislature. But all land is in theory held under a grant from the State, and the right of appropriating it for public uses is founded as well upon the principle of absolute necessity, as upon immemorial usage ; so that every one who takes a grant of land from the State is presumed to know that he takes it subject to the eminent domain. But there is no such preëxisting necessity or usage in relation to a pure franchise, and no such presumptive notice as to the power of the public to resume the grant. We do not deny the right of eminent domain over lands granted by the State to a corporation, subsequently to its incorporation, nor even over lands granted by the charter, where they are not essential to the existence of the corporation or the enjoyment of its franchise. But there is an obvious distinction between those cases and one like the case at

*Boston Water Power Co.*
*v.*
*Boston and Worcester Rail Road Corporation.*

bar, where the existence of the franchise depends upon the subject matter granted or acted upon. Even in the case of a grant of land, should the legislature covenant never to exercise the right of eminent domain over it, we do not perceive why the covenantee would not be protected by the constitution of the United States. It will perhaps be said, that it is incompetent for the legislature to part with that right ; but to maintain this position the provision in the constitution of the United States must be regarded as of no effect. Nor can it be said that a State does not impair a contract when it makes compensation for rescinding it. *Commonwealth* v. *Cambridge*, 7 Mass. R. 167.

Now we contend, that the charter of the plaintiffs constituted a continuing executory contract between them and the State, totally distinct from a mere grant of land. It was a grant in the exercise of eminent domain, of a right over these lands for peculiar uses, those uses requiring constantly a vast expenditure of money, and being in their nature exclusive of all other uses as well by the grantees as others. It was a special contract, in which the State stipulated for the continued exercise of its right of eminent domain upon condition of the plaintiffs performing their part of the contract, and the plaintiffs stipulated to keep the works in repair and in a state to benefit the public, and it resembles any other contract made for a special purpose and which the State cannot revoke.

The second ground, under this first point, is, that the legislature having granted to the plaintiffs the right of exercising the eminent domain over these lands for a specific purpose, and for a valuable consideration, and they having entered upon the enjoyment of the grant and paid the consideration, the legislature could not grant the same right to the defendants for a different purpose. In this point of view the case stands rather as a question of title than one of constitutional power, and rests upon the common law axiom, that a second grant of the same hing is void. To give validity to the second grant would not be a taking for the public use, for the public already had the benefit of the subject of the grant, but it is only shifting the private benefit. *Chesapeake &c. Canal* v. *Baltimore &c. Rail Road*, 4 Gill & Johns. 1.

2. If the legislature had themselves this power to impair or revoke the plaintiffs' franchise, in whole or in part, they could not constitutionally delegate to private individuals the power of determining upon the expediency of doing so ; and especially not to persons directly interested to impair or revoke it.

That these defendants, if they have the right claimed, do hold or take it under a delegated authority to exercise the legislative functions in this behalf, is manifest, because upon reference to the acts under which they claim, it appears that no legislative action was ever had upon the question of resuming or impairing this franchise, and the plans and reports of engineers and of the board of directors of internal improvement, show that the rail road might have been constructed and carried to the depot on the South Cove by a different route ; and the actual determination of the question between the comparative importance of this franchise to the public, and of the construction of the rail road here rather than elsewhere, was made by the rail road corporation themselves. We are aware of the usage which existed in this State, of granting to corporations general powers to lay out turnpike roads, without prescribing the precise limits, and which has been modified by *St*. 1804, *c*. 125, § 1 ; but this course of legislation is anomalous and peculiar to this country. It arose, probably, from the newness of our settlements, and the comparative worthlessness of land and paramount value of roads to the owners of lands ; and the question has never been the subject of a direct judicial decision. If it were a new question, we should insist that a power of so solemn a nature and involving consequences so important to the public and to individuals, could not be so delegated. And if our case required it, we should even now appeal to the first principles of law, and deny that a power resting in a body appointed by the public, and to be exercised solely for the public, could be delegated to private and irresponsible individuals, not impartial and disinterested, but acting from motives of direct personal, private, pecuniary interest. *Commonwealth* v. *Parker*, 2 Pick. 556 ; Declaration of Rights, *art.* 10 ; 1 Bl. Comm. 139. The power of taking land for highways is delegated to Courts of Sessions and municipal corporations, but they are public bodies and governed by general laws. *Blood-*

*good* v. *Mohawk and Hudson Rail Road Corp.* 18 Wendell, 69 ; *Commonwealth* v. *Charlestown,* 1 Pick. 185. It is an axiom of our government, that the legislature acts by a delegated authority and merely as servants of the people ; and it is an axiom of the common law, that *delegatus non potest delegare.* *Charles River Bridge* v. *Warren Bridge,* 7 Pick. 445 ; *Marr* v. *Enloe,* 1 Yerger, 452 ; *Boston* v. *Schaffer,* 9 Pick. 415.

But though a usage may have prevailed, of delegating to individuals the power of appropriating private property in this way, it has never yet been acknowledged by practice or precedent, that the power of taking public property, or of revoking public contracts, has been or can be thus delegated. It cannot be contended that under this act for laying out a rail road, power is given to the corporation to appropriate arsenals, dock-yards, public buildings, colleges, and other establishments created for the public defence, instruction or ornament ; but all franchises created by the exercise of the eminent domain, are to all intents public works and equally sacred. The franchise in question involved a great exercise of this sovereign power, over a vast territory, and was created at a vast expense ; the grant was made on the ground that the public good to be produced justified and required this appropriation of the private property of individuals ; and can it be supposed that the legislature ever delegated to private individuals the power of determining upon the continuance of this great public establishment ? Further, the legislature, by the charter to the plaintiffs, entered into a solemn contract, that in consideration of vast sums of money to be contributed by them, they should perpetually enjoy the benefit of this franchise, and the public faith was pledged. It cannot be pretended that the legislature, by the grant of a general power, has acted upon the question of abrogating this franchise ; for it is obvious that the question, whether it was more for the public good to have the road pass in this direction and thus sacrifice this franchise, or to have it pass in another, so that the public might enjoy both, has never been acted upon by the legislature, nor by any public body acting under general laws.

3. If it were competent to the legislature to delegate to the defendants the power of revoking or impairing the plaintiffs'

franchise, yet according to the rules of legal construction the charter of the defendants does not purport to delegate to them any such power.   It being a branch of the sovereign power the exercise of which affects the rights of private individuals by the appropriation of their property, and the public by impairing a franchise previously established for the public good, and most of all, involves the integrity and good faith of the government in regard to its contracts, any delegation of it into the hands of third persons, and especially those who are under no responsibility to the public, and who have pecuniary interests at stake, should, upon all laws of interpretation, be by express terms or by necessary implication.   And if the terms and object of the grant in which such delegation is alleged to be found, can be answered by any other interpretation, so that both may stand together, this latter interpretation is to be adopted.   This is the more obviously necessary conclusion here, because if the construction contended for by the defendants is sound, they would have an equal right to destroy the arsenal, pass through public fortifications, or cross navigable rivers, under their charter, as to take this public franchise.   Now there can be no pretence of any express grant of the power claimed; no mention is made of any right to appropriate public property, or to take or destroy a previously granted franchise; the only terms used in the original act, under which alone the rail road corporation can claim, designating the property to be taken, are *lands* and *materials*; no specific route is prescribed, general *termini* are alone given; and the case finds that various other routes were practicable.   The only ground therefore upon which the power can be asserted, is by implication.   But such implication cannot be said to be necessary, where the terms can be answered and the objects of the act obtained by a different construction; as is clearly the case here.

The first ground we take under this point is, that grants of this sort are to be construed strictly, and not as passing any powers which are not necessary for carrying the purposes of the charter into effect    2 Kent's Comm. (3d ed.) 298, 299 ; *Charles River Bridge* v. *Warren Bridge*, 11 Peters, 465, and cases there cited ; *S. C.* 7 Pick. 464, 468, 469, 557 ; *Providence Bank* v. *Billings*, 4 Peters, 514 ; *The Elsebe*, 5 Rob.

32

Boston Wa-
ter Power
Co.
*v.*
Boston and
Worcester
Rail Road
Corporation.

Adm. R. 183 ; *Chesapeake &c. Canal* v. *Baltimore &c. Rail Road*, 4 Gill and Johns. 123, 175 ; *Kingston-upon-Hull Dock Co.* v. *La Marche*, 8 Barn. & Cressw. 42 ; *Stourbridge Canal* v. *Wheeley*, 2 Barn. & Adolph. 792 ; *Commonwealth* v. *Coombs*, 2 Mass. R. 492 ; *Arundel* v. *M'Culloch*, 10 Mass. R. 70 ; *Martin* v. *Commonwealth*, 1 Mass. R. 356 ; *United States* v. *Arredondo*, 6 Peters, 738 ; *Rutherford* v. *Green's Heirs*, 2 Wheaton, 203 ; *Beattee* v. *Knowles's Lessee*, 4 Peters, 168 ; *Jackson* v. *Lanfear*, 3 Peters, 289 ; 19 Vin. Abr. 525, *pl.* 132. Upon this general principle we should contend, that as the defendants could have laid out their road in various other directions, and the right to go through these basins and thus injure the plaintiffs' franchise was not necessary, no such power to injure or destroy a franchise created for the benefit of the public, as well as of individuals, and to impair works of such vast importance, could be implied.

Another ground on which the defendants' charter shall be held not to authorize the destruction of our franchise, is, that the grant of the use of these lands to the plaintiffs for the purposes specified in their charter, was a dedication and appropriation of them to the public use ; and no subsequent grant can be construed to impair or destroy that use, unless by its express terms or necessary implication such construction is unavoidable. *Boston and Roxbury Mill Corporation* v. *Newman*, 12 Pick. 476 ; *Commonwealth* v. *Coombs*, 2 Mass. R. 489 ; *Arundel* v. *M'Culloch*, 10 Mass. R. 70 ; *Hood* v. *Dighton Bridge*, 3 Mass. R. 267 ; *Keen* v. *Stetson*, 5 Pick. 494 ; *Commonwealth* v. *Stevens*, 10 Pick. 248 ; *Wales* v. *Stetson*, 2 Mass. R. 146 ; *West Boston Bridge* v. *County Commissioners &c.* 10 Pick. 272 ; *Wellington, Petitioner &c.* 16 Pick. 105.

Another reason against the defendants' construction of their charter is, that no compensation is therein provided for the injury which might be done to the *public* by the destruction of this beneficial franchise. The legislature might undoubtedly surrender this benefit, but a surrender without consideration will not be implied except by an inevitable construction. Here, as before remarked, the public might well have had the benefit of the water power and of the rail road, without the interfer-

ence of one with the other. *Commonwealth* v. *Stevens*, 10 Pick. 248. It will be said that the compensation to the public lies in the greater benefit to arise from taking this route rather than any other ; but it may not be so great ; and the legislature cannot be presumed to have given to an interested corporation the power of determining the question.

A further ground on which we contend that the rail road charter does not confer the power claimed under it, is that a subsequent statute or grant shall not be construed to revoke a previous one, if capable of a different construction. By the plaintiffs' charter the legislature had granted and appropriated to them the exclusive use of these lands for a particular purpose ; and now the defendants assert a right to the use and enjoyment of the same lands for a different purpose, destructive entirely of the use of the land taken, and consequentially injurious to the whole franchise of the plaintiffs. 3 Kent's Comm. (3d ed.) 459 ; *United States* v. *Arredondo*, 6 Peters, 738, 740 ; *Rutherford* v. *Green's Heirs*, 2 Wheaton, 203 ; *Jackson* v *Muzzy*, 7 Johns. R. 5 ; *Chesapeake &c. Canal* v. *Baltimore &c. Rail Road*, 4 Gill & Johns. 108, 109, 134, 136, 144, 145, 149, 154, 190 ; *Pease* v. *Whitney*, 5 Mass. R. 382 ; *People* v. *Platt*, 17 Johns. R. 195 ; *M'Cartee* v. *Orphan Asylum*, 9 Cowen, 507 ; *Charles River Bridge* v. *Warren Bridge*, 11 Peters, 619, and cases cited ; *S. C.* 7 Pick. 527; *Terrett* v. *Taylor*, 9 Cranch, 50 ; *Williams* v. *Pritchard*, 4 T. R. 2 ; *Gibson* v. *Buck*, 15 East, 371 ; *Scales* v. *Pickering*, 4 Bingh. 450; 2 Wms's Saund. 175, note 2 ; 5 Bac. Abr. 385, *Prerog. F;* 19 Viner, 525, *pl.* 132 ; *People* v. *Tibbetts*, 4 Cowen, 392 ; *Enfield Bridge* v. *Connecticut River Co.* 7 Connect. R. 28 ; *United States* v. *Harris*, 1 Sumner, 42 ; *Coolidge* v. *Williams*, 4 Mass. R. 145. If it be alleged in reply to these authorities, that they are cases of subsequent acts impairing prior grants without providing compensation, we answer that this consideration is of no avail, for the taking of the prior grant or vested right, is nevertheless *in invitum*, and as much a revocation and destruction of the right as if no indemnity were provided, and the rule of construction must therefore be the same. *Commonwealth* v. *Cambridge*, 7 Mass. R. 167 ; *Commonwealth* v. *Sawin*, 2 Pick. 547.

Boston Water Power Co.
*v.*
Boston and Worcester Rail Road Corporation.

Boston Wa-
ter Power
Co.
v.
Boston and
Worcester
Rail Road
Corporation.

4. The charter of the defendants does not in terms, nor by any just interpretation, purport to vest in them the power of revoking or impairing a franchise ; nor is any compensation provided for such an injury. The only power given is to lay out their road not exceeding five rods wide, and for the purpose of cuttings and embankments and procuring stone and gravel, to take as much more *land* as may be necessary ; and the compensation for damages is limited to such as are occasioned by the taking of land, and is to be made to those whose lands are taken. And so far from there being any power to take, or destroy, or impair any other franchise, provision is made to prevent it in all cases where the conflict could be anticipated. *St.* 1831, *c.* 72, § 11. *Land* and *materials* clearly do not embrace franchises or easements. A grant of land does not pass the easement ; nor does a grant of the easement pass the land. *West Boston Bridge* v. *County Commissioners &c.* 10 Pick. 272 ; *Charles River Bridge* v. *Warren Bridge,* 7 Pick. 385, 502, 529. It is plain, too, that as between the plaintiffs and the defendants the latter have not taken any land belonging to the plaintiffs, but merely their easements. 16 Pick. 512. The defendants may rely upon the additional act of the 11th of March, 1833, (*St.* 1833, *c.* 91, § 2,) which provides that in case the rail road corporation shall " not be able to obtain the land or *other property* which they may take for said road, or for the proper construction and security thereof, by voluntary agreement with the owner," the corporation, as well as the owner, may apply to the county commissioners of the county where the property is situate, to estimate the damages occasioned by taking the same. But the object of this provision was, not to give new power to take, but merely to give to the corporation the privilege of applying to the county commissioners for an estimate of the damages ; which, in the original act, was given only to the party whose land should be taken. Further, the words *other property,* in the additional act, must be construed to have the same meaning as in the original act ; where they are used (§ 8,) to embrace the estates of minors &c. in lands held in trust for them, and not as embracing any distinct and different estates from those in lands which the corporation was, by a previous section, authorized to take. And this act

does not apply to land or property in Boston, because it gives a remedy only by application to county commissioners, and there are no such commissioners in Boston; and the *St.* 1834, *c.* 137, authorizing a similar application to the mayor and aldermen of Boston, contains a provision that it shall not affect existing rights. It may be contended, that it is not necessary that compensation should be provided in the act giving the power to take; and the case of *Bonaparte* v. *Camden and Amboy Rail Road Co.* 1 Baldwin, 226, is an authority to that effect; but the doctrine is a virtual surrender of the protection afforded by the constitution, and is contrary to the decisions in this and other States. *Perry* v. *Wilson,* 7 Mass. R. 395; *Stevens* v. *Middlesex Canal,* 12 Mass. R. 468; *Callender* v. *Marsh,* 1 Pick. 430; 2 Kent, (3d ed.) 339; *Gardner* v. *Newburg,* 2 Johns. Ch. R. 168; *Eakin* v. *Raub,* 12 Serg. & Rawle, 372; *Bloodgood* v. *Mohawk &c. Rail Road,* 18 Wendell, 17.

5. The legislature have by express terms, or by necessary implication, prohibited this location of the rail road. The 15th section of the charter denies the corporation " authority to erect a bridge *over the waters* of Charles river, connected with the city of Boston "; and in the additional act of March 22d, 1832, (*St.* 1832, *c.* 153, § 1,) authority is given to erect a bridge across the waters of Charles river, but only between the main dam and Canal bridge. Before the construction of this dam the waters which flowed over the basins were the waters of Charles river, and they continue to be such, notwithstanding the dam. They remain navigable to a certain extent, and are still the public property so far as regards sailing on them and fishing in them; and the only change made is a partial obstruction of the communication between this and the other portion of the river.

6. Our last point is, that the location so injurious to the plaintiffs, was made, not from motives of public policy, but by reason of a pecuniary consideration paid to the defendants by the South Cove Corporation, and is therefore void. *Com monwealth* v. *Sawin,* 2 Pick. 547; *Commonwealth* v. *Cam bridge,* 7 Mass. R. 158. It is said that the charter of the South Cove Corporation contemplates that the road should

Boston Water Power Co. *v.* Boston and Worcester Rail Road Corporation.

pass through the basins and terminate on the cove; but it is not to be inferred that the legislature, or the plaintiffs, supposed that this would be done without obtaining a lawful right, either by contract or otherwise, to pass in this direction.

*Aylwin,* for the defendants. The contract between the Commonwealth and the Boston and Roxbury Mill Corporation creates no franchise as to the water power itself. A franchise is a public liberty or right, granted to a private person for public purposes. Finch's Law, 114; 2 Bl. Comm. 37. The act of 1814 establishes the Boston and Roxbury Mill Corporation, authorizes the building of dams, the enclosing of tide waters, and the taking of toll. These may be franchises The power to drive mills by the water thus penned in was *property.* The right of *using the water* was authorized *to be sold.* It was an *easement over land;* and the language in 16 Pick. 572, does not fairly warrant any other construction The right to *dispose* of the water, although derived directly from the Commonwealth, altered not the nature of the property. All *lands* are thus held. No one pretends that a grant of land by the Commonwealth will create a franchise; and much less will an ownership in the waters flowing over it, or the right to use or sell it. The mill corporation had no right to sell its franchises, nor the water power company to buy them; so that the plaintiffs are not the assignees, in this respect, of the mill corporation. Franchises are not essentia to a corporation. *The King* v. *City of London,* Skinner 310.

By these acts, which are called a contract, the Common wealth has not imposed on itself any restraint against resuming the water power, or the franchise, if it is one, for public uses The subject matter is but *property,* and like all other property is held liable to appropriation for such purposes. There is nothing to preclude the appropriation of a franchise, if necessary, to public use, an indemnity being made to the owner. *Providence Bank* v. *Billings,* 4 Peters, 562; 2 Kent. (3d ed.) 338, 340; *Beekman* v. *Saratoga Rail Road,* 3 Paige, 72; *Charles River Bridge* v. *Warren Bridge,* 7 Pick. 459, 500, 522, 530, 531; *Dartmouth College* v. *Woodward,* 4 Wheaton, 689; *Piscataqua Bridge* v. *New Hampshire*

*Bridge*, 7 N. Hamp. R. 67, 69 ; *Charles River Bridge* v. *Warren Bridge*, 11 Peters, 546, 547, 580, 582, 646 ; *Dyer* v. *Tuscaloosa Bridge*, 2 Porter, (Alabama,) 304 ; Anc. Charters, &c. 127 ; *Prov. St.* 5 *Will. & Mary*, *c.* 10 ; Plymouth Colony Laws, 269 ; *Lindsay* v. *Commissioners*, 2 Bay, 38 ; *Stoughton* v. *Baker*, 4 Mass. R. 522 ; *Cottril* v. *Myrick*, 3 Fairfield, 231 ; *Vinton* v. *Welch*, 9 Pick. 92.

The defendants contend, that every power and immunity to accomplish the end proposed, was granted to the rail road corporation, as well in regard to the location, as in regard to the property to be taken. The only restriction is, that a bridge shall not be erected over the waters of Charles river connected with the city of Boston, nor any obstruction be placed in those waters. And the defendants deny that the waters of the basins are the waters of Charles river. *St.* 1831, *c.* 72, § 1, 7, 15 ; *St.* 1832, *c.* 152 ; *St.* 1833, *c.* 91, and *c.* 187 ; *St.* 1834, *c.* 137.

They further contend, that the legislature must have had in view the route across the basins, and if not directly, certainly by implication, sanctioned this route. See *St.* 1827, *c.* 116 ; Report of J. F. Baldwin, to the Board of Internal Improvements, *p.* 21, 61, where there is an express proposal to bring the Boston and Providence rail road across one of the basins ; *St.* 1833, *c.* 17, § 6, (establishing the South Cove Corporation,) passed in January 1833, previously to the actual location, which was in May 1833 ; Resolves of 1829, *p.* 99.

The question of expediency as to an appropriation of property generally, for the rail road, is decided by the legislature, whose decision is final. *St.* 1831, *c.* 72 ; *Commonwealth* v. *Breed*, 4 Pick. 463 ; *Spring* v. *Russell*, 7 Greenleaf, 272 ; *Wellington, Petitioner*, 16 Pick. 101. The particular location is left to the rail road corporation ; and the right of appropriation, by inevitable conclusion, extends to these basins. *Rogers* v. *Bradshaw*, 20 Johns. R. 740.

There is nothing in the nature of the act to be performed, which should restrain the legislature from delegating the power to fix on the location of a rail road. It has been the usage of this Commonwealth and of other States to delegate the power in similar cases ; sometimes to the party interested, and some-

Boston Wa-
ter Power
Co.
*v.*
Boston and
Worcester
Rail Road
Corporation.

times to public boards or tribunals. 1 Special Laws, 329, 309, 357, 382, 466, 502; 2 Special Laws, 93; *St.* 1804, *c.* 125; *St.* 1822, *c.* 27; *St.* 1822, *c.* 57; *St.* 1827, *c.* 127; *St.* 1825, *c.* 183; *Commonwealth* v. *Charlestown*, 1 Pick. 185; *Wellington, Petitioner*, 16 Pick. 101; *Farmers' Turnp. Co.* v. *Coventry*, 10 Johns. R. 400; *Beekman* v. *Saratoga Rail Road*, 3 Paige, 74; *Mohawk Bridge Co.* v. *Utica Rail Road*, 6 Paige, 561; *Boston* v. *Schaffer*, 9 Pick. 418. And the power to locate the rail road was a fit subject of delega-tion, because scientific and peculiar knowledge was required for the purpose, and it was for the interest of the corporation to select the best route.

Whether this is held to be a franchise, the enjoyment of which is interrupted, or mere property, the rail road corpora-tion were authorized to interfere with it, because compensation was provided. In the 1st section of their charter (*St.* 1831, *c.* 72), the defendants are authorized to lay out their road five rods wide, and for the purpose of cuttings, embankments, and procuring stone and gravel, to take as much more land as may be necessary, &c. " provided, however, that *all* damages that may be occasioned to any *person* or *corporation*, by the taking of such land or materials, &c. shall be paid for," &c. In the 7th section it is enacted, that the defendants shall be holden " to pay all damages that may arise to any person or per-sons, corporation or corporations, by taking their land for said rail road, when it cannot be obtained by voluntary agreement, to be estimated and recovered in the manner provided by law for the recovery of damages happening by the laying out of highways." The 8th section manifests the intent of the leg-islature by " damages occasioned," &c. for it provides, that " when the *lands* or *other property* or *estate* of any feme cov-ert, infant, or person *non compos mentis*, shall be necessary for the construction of said rail road, the husband &c. may re-lease all damages for any *lands* or *estates* taken and appro-priated as aforesaid. And to remove all doubts, the act of 1833, *c.* 91, provides that in case the defendants shall not be able to obtain " the *land* or *other property* which they may take, &c. by voluntary agreement, &c. the said corporation, as well as the said owner or owners, may apply to the county

commissioners to estimate the damages occasioned by taking the same." See, also, *St.* 1833, *c.* 187.

And there was a suitable tribunal to award the compensation, namely, that which was intrusted with the laying out of high-ways. In Boston, the mayor and aldermen are invested with this authority ; and when the legislature, in *St.* 1831, *c.* 72, speak of application to the county commissioners, they must be understood to include the mayor and aldermen of Boston, who have the same powers as county commissioners. The *St.* 1834, *c.* 137, is confirmatory of this view. And if it be necessary, in order to uphold the validity of the act, the Court are warranted by authority in adjudging, that a subsequent provision for indemnity (as in this statute of 1834) is equivalent to a contemporaneous one, when property is appropriated to public use. *Rogers* v. *Bradshaw*, 20 Johns. R. 745 ; *Eakin* v. *Raub*, 12 Serg. & Rawle, 366, 372 ; *Bloodgood* v. *Mohawk, &c. Rail Road*, 14 Wendell, 52 ; *Canal Appraisers* v. *The People*, 17 Wendell, 572. At the time when the road was actually located, the *St.* 1833, *c.* 91, was in force, giving indemnity for " property " to be taken.

*F. Dexter*, on the same side. The plaintiffs deny the right of the defendants to lay out and construct the rail road over the basins, first, because the legislature had no power to authorize it to be done. In support of this position, it is said, that by the common law a franchise cannot be granted at variance with one previously existing ; and further, that the State granted its eminent domain to the plaintiffs, and this grant is a contract which, under the constitution of the United States, is not to be violated by another grant of eminent domain. But there is a fallacy in supposing it a grant of eminent domain. That cannot be granted. It is inalienable, because it is an essential right of sovereignty. The legislature have merely exercised the right of eminent domain, through the agency of the plaintiffs and of the defendants. In the case of the Chesapeake and Ohio Canal against the Baltimore and Ohio Rail Road, re-lied on by the plaintiffs, there were two acts of incorporation, the first authorizing the construction of a canal, the second of a rail road. The route of the canal was confined to the valley of the Potomac river ; that of the rail road was not so re-

Boston Wa-
ter Power
Co.
v.
Boston and
Worcester
Rail Road
Corporation.

stricted ; but there was one place by the river where the canal *must* pass, and where it would be convenient for the rail road to pass, but both could not be accommodated ; and the question was, which corporation was entitled to the preference. Neither of them had made its location there, but each claimed the right, and when the rail road corporation was beginning to lay out its road there, the canal corporation applied for an injunction ; and the court determined, that the company first incorporated had the prior right. The case has but little resemblance to the one now before the Court. The question there was, of the power of either corporation to acquire a franchise by condemning private land to a public use ; of the right to exert unexecuted power ; here, the power had been executed by the plaintiffs, and they had thereby acquired a qualified property in the land, and the question is, whether the rail road corporation may take this private property ; there, the legislature could not have given the rail road corporation the power to locate in the particular place, inasmuch as it would violate a previous executory contract. The power to locate the canal was not a thing that could be taken ; it was not property, but a right to acquire property. Authorities have been cited to show, that the same franchise cannot be twice granted ; and it is supposed, from some old cases, that franchises are more sacred from the reach of sovereign power than other property ; whereas, those cases could not have arisen, but for a mistaken notion that they were less sacred. The granting of franchises being a branch of regal prerogative, the doubt was, whether the king could not resûme a franchise, and the court held that he could not, because it *was* private *property.* Kings never thought of granting the same land a second time. But the plaintiffs' franchise is not granted to the rail road corporation. This corporation is not to exercise the powers of the mill corporation. The land, in or over which the mill corporation hold a franchise, is taken by the defendants for another public use, by which the plaintiffs' franchise is extinguished *pro tanto.* But why might not the franchise be taken for a public use ? The writers on law, municipal and general, hold, that all private property may be so taken ; and is not a franchise private property ? It has all the incidents of property. It descends to

heirs, it may be sold, it may be taken on execution to pay debts. But if the question were uncertain at common law, it has been settled by this Court, in the case of the Charles River bridge ; where it was held by all the judges, except one, that the old ferry right had been taken by eminent domain ; and see *Dartmouth College* v. *Woodward*, 4 Wheat. 518, and *Piscataqua Bridge* v. *New Hampshire Bridge*, 7 N. Hamp. R. 35.

But it is said, that this is property holden under a giant from the State, and to take it away impairs the contract of that grant. But this stands on the same ground as other kinds of property granted by the State. All lands are deemed to be holden by grant from the State, and yet the plaintiffs concede, that land may be taken for public use. They argue, however, that such an appropriation of land is essential to sovereignty, to the public safety, but that it is not so in respect to franchises. This proceeds on the same fallacy, that their franchise is taken ; whereas it is only land covered by the franchise. Or if the franchise ceases *pro tanto*, it is taken, not in violation of a contract, but by the right of eminent domain. Cannot the State take the land in the plaintiffs' basins for defence against an enemy ? And, if so, cannot they take it for a rail road ? The doctrine set up by the defendants will apply equally to mill ponds created under the general law allowing a mill owner to flow the lands of other persons. He has a franchise as much as the plaintiffs, and however insignificant his mill pond may be, no rail road or highway could be carried through it against his consent.

It is further objected, that this land has once been taken for public use, and cannot be taken again. There is a dictum to that effect in *West Boston Bridge* v. *County Commissioners*, 10 Pick. 272 ; but it was never delivered as the opinion of the Court ; *S. C.* 13 Pick. 196 ; and besides, there the appropriation was for the same use, a turnpike road being converted into a county road; here it is for a different use. Possibly a turnpike road might be taken by the legislature for a free road, upon making compensation to the turnpike corporation ; but this is immaterial to the present case. So far as concerns the plaintiffs, the land is private property, and therefore liable to

Boston Wa-
ter Power
Co.
v.
Boston and
Worcester
Rail Road
Corporation.

be taken ; so far as concerns the public, the legislature have full power to change the public use.

That the right to take this property for public use may be delegated, cannot be made a serious question. When county commissioners have a delegated power of determining whether, and when, and where, roads shall be made, and of taking property to make them, cannot a special commission be appointed to execute a work of a like nature, the expediency of which has been declared by the immediate act of the legislature ? It is said, that the county commissioners are a permanent and general tribunal, acting on all cases ; but that does not vary the power of appointment. Nor is it a valid objection, that the rail road corporation is interested ; this does not touch the right, but only the expediency of selecting it as the agent.

But if the legislature had the power to authorize the rail road corporation to take this property, have they exercised the power ? Have they granted the authority ? *Primâ facie* they have, because they have granted to the corporation, " all the powers, privileges, and immunities necessary to carry into effect the purposes and objects of the act," viz. " to locate, construct, and finally complete a rail road in or near the city of Boston, and thence to Worcester, in such manner and form as they shall deem to be most expedient ; and, for this purpose, to lay out their road five rods wide through the whole length, and take as much more land as may be necessary " for the construction and materials of the road. This gives power to the defendants to lay out the road over such land as they should deem to be most expedient ; and they have deemed this the most expedient. The burden is on the plaintiffs to show, that their property is not embraced by the general words in the charter of the rail road corporation. They say, that the power to take it must be granted in express terms, or by necessary implication. This we deny. In all cases of grant .and other contracts, the intent is to govern. In the case of private contracts, the Court is confined to the writings of the parties. But in construing public grants, as well as statutes, the Court will look at all the facts and circumstances that may indicate the intent ; at least, all facts of a public nature ; and will adopt a liberal or a strict construction. *Preston* v. *Bowden* 1

<div style="float:right">
Boston Wa-
ter Power
Co.
v.
Boston and
Worcester
Rail Road
Corporation,
</div>

Wheaton, 115.   The design of the legislature was to have the rail road built ; but this could not be accomplished, if at least necessary implication is required to enable the corporation to proceed.   The Court, then, must look at all the circumstances, and see how the work can be done, and at a reasonable expense.   There are no words in the charters under which the plaintiffs hold, either expressly or by necessary implication, exempting this property from being taken ; nor is there any thing in the nature of the property itself to have that effect.   As a franchise, it has no such privilege ; as such, it is but private property, and what presumption is there, that the legislature did not intend to take it, if they have the same right over it as over other property ?   It is urged, that it is holden under a grant from the legislature, and if the legislature can impair it, it is not to be presumed that they will do so.   But this applies equally to all lands.   It is further said, that it has been once appropriated to public use.   This is a fair source of argument in construing a subsequent act, and is entitled to more or less weight, according to the nature of the case.   The plaintiffs ask, if we could lay out the rail road over the land occupied by the State-house, the State-prison, arsenal, &c.   Certainly not, without a clear manifestation of the public will.   But then, it is asked, how can we make the distinction ?   There are two answers ; first, the buildings enumerated by way of instance are for public use exclusively ; whereas, these basins are only *quasi* of public use ; but, secondly, a better answer is, the importance of the use is to be regarded.   But who shall determine whether the legislature intended to sacrifice one public interest to another ?   We answer, this Court, as a court of chancery.   If a rail road corporation, under general words of grant, should undertake to pull down the State-house, this Court would issue an injunction.   The question must be settled in extreme cases, by the relative importance to the public, of the thing to be done and the thing to be sacrificed ; but in cases of little importance to the public, general words of grant must be interpreted in their ordinary sense.   These basins are simply a mill pond, and their importance to the public is incomparably less than that of the rail road.   Had the plaintiffs been remonstrants before the legislature, it is not to be believed, that their mill pond

Boston Wa-
ter Power
Co.

v.

Boston and
Worcester
Rail Road
Corporation.

would have been permitted to divert the rail road from the route which the defendants should deem most expedient. Further, the course of legislation on the subject of rail roads, and the documents and plans before the legislature, together with the face of the country in the neighbourhood of Boston, show that there was no design to give special protection to these basins. Among the documents was a report of the board of internal improvements, with a plan on which was marked a route for the Boston and Providence rail road, over the plaintiffs' receiving basin, and the charter for that rail road, containing no prohibition to cross such basin, was granted at the same time with the charter for the rail road to Worcester.

The act incorporating the South Cove company is a confirmation of the location of the rail road across the basins.

As to the prohibition to cross Charles river, it is a question of intent. The waters of the basins were no longer known as Charles river, and had ceased to be navigable. And if the prohibition to cross Charles river was meant to apply to the basins, why were not similar words of prohibition inserted in the charter of the Boston and Providence Rail Road Corporation ?

It is alleged that this route was selected, not for the public benefit, but for compensation in money and facilities offered by the South Cove Corporation. This offer was expressly authorized in the charter of that corporation, but the directors of the rail road, in their answer, which is responsive to the bill and not controlled by evidence, swear that they went to the South Cove, because that was the best route ; though they were enabled to go there by the bonus. The pecuniary inducement therefore does not invalidate their proceedings. *Parks* v. *Boston*, 8 Pick. 218.

*J. Mason*, in reply. The Boston and Roxbury Mill Corporation had the right to use these waters in the basins, flowing over the lands of the Commonwealth and of individuals, and the plaintiffs were authorized to purchase and did purchase the same right ; and this right has been decided to be a franchise. Whether a part of the eminent domain shall be deemed to be vested in the grantee of a franchise, is not important ; it is sufficient that the franchise is founded on a contract, the violation of which by a State legislature, is prohibited by the consti-

tution of the United States. To permit a State to violate a contract on the ground of necessity, and to be the judge of the necessity, would render the prohibition nugatory. The right of eminent domain does not constitute an exception. *Charles River Bridge* v. *Warren Bridge*, 7 Pick. 502 ; *S. C.* 11 Peters, 570. The doctrine that eminent domain cannot be surrendered, is applicable to the several United States. Various sovereign rights, for instance, those of coining money, making war, have been yielded by them to the federal government ; and when they bind themselves not to violate a contract, they may as well do so in a question of eminent domain in other cases. *Chesapeake &c. Canal* v. *Baltimore &c. Rail Road*, 4 Gill & Johns. 108, 109, 144, 147, 178, 183, 185, 187, 230, 236, 273. It is said that in the case cited, the canal had not been located, whereas the grant to the mill corporation has been executed by the erection of the dams. If this can make a difference, then so long as the corporation does nothing it is protected by the law, but the moment it puts its right in execution, it forfeits protection ; and the defendants' argument is *felo de se*, for they say that we have not executed the authority conferred on us ; so that by their reasoning we are to be protected. It is said that to control the eminent domain will lead to disastrous consequences ; if so, the constitution may be altered.

But if the legislature have this transcendant power of eminent domain, they have no right to delegate it to a private individual or corporation. It belongs to the State, and is only intrusted to the legislature. The right to exercise it may be vested in public officers, as courts, &c. but here it is placed in the hands of an interested corporation, subject to no control by this Court, or even by the legislature, except by creating a new corporation to destroy the property of the rail road corporation. And it is said that this course is expedient, because the legislature have not the peculiar science and skill requisite for laying out a rail road ; but may they not employ engineers and other persons competent to give them information and assistance ? The legislature now, before they grant authority to construct a rail road, require the route to be specifically described. It is urged that the usage is to delegate powers like those in question ; we deny

Boston Wa-
ter Power
Co.
v.
Boston and
Worcester
Rail Road
Corporation.

that there is any usage to delegate to private individuals or cor-
porations powers so extensive as those claimed by the rail road
corporation, and if there were, it could not avail.    There is
but little analogy between the case of taking land for a road,
and the present case.    If the rail road corporation is not con-
fined to the taking of land, it may take a franchise or personal
property.

Supposing that the legislature could grant the power to cross
these basins, the plaintiffs insist that they have not done it.
The legislature must in some manner describe the property to
be taken, so as to show distinctly what is granted.    The na-
ture of the power, it being a transcendental power of the sover-
eign, forbids a loose implication of such a grant.    The citizen
is entitled to be protected against the exercise of so dangerous
a power except by the legislature.    Further, a grant by the
government is to be construed strictly against the grantee ; and
the fact that it is founded on a valuable consideration, is not
important in this respect.    The defendants' charter authorizes
them to take " land," but a franchise is not included in that
term, nor in the broader expression " real estate," used in the
charter of the Warren Bridge Corporation.   7 Pick. 344.    It
must appear with certainty that the legislature intended to de-
stroy the previous franchise granted by themselves for the public
benefit ; and they would not allow it to be done without giving
notice to the plaintiffs.    The proviso, that compensation shall
be made for all damages occasioned by the taking of land or
materials, is not an extension of the grant but a limitation on it.
The obvious intention is to compensate the owner of the land ;
whereas the defendants say that a corporation whose land and
materials are not taken, is to have damages.    In the 8th sec-
tion of the rail road charter *property* means *land*.    In this sec-
tion it is enacted, that when " the lands or other property or
estate " of any feme covert, &c. shall be necessary for the
construction of the road, the husband &c. " may release all
damages for any lands or estates taken and appropriated as
aforesaid."    The object was merely to enable some one to
give a release of damages for persons under certain disabilities ;
and in the clause respecting the release the word *property* is
dropped.    In the additional act (*St* 1833, *c.* 91, § 2,) in

which the word *property* is used, the object was to enable the rail road corporation to apply to the county commissioners to assess the damages ; previously the remedy lay in favor of the land owner alone. The general statute of 1833, *c.* 187, does not aid the defendants, for it provides compensation only " for lands or other property " taken by any rail road corporation " as allowed by their charter." If such a corporation may take other property than land, where is the limit ? Why may they not take any personal property ; for instance, a cargo of rail road iron imported by any individual ?

. The defendants urge, that the reports and plans before the legislature, and the charter of the South Cove Corporation, prove that the route over the basins was authorized. But they show that there were other routes which might have been taken ; and besides, the legislature might well have supposed that the rail road corporation would purchase the right of crossing the basins. It is said that a plan exhibited a route for the Providence rail road over one of the basins, and that this plan was published by order of the legislature ; but it does not follow that the Providence Rail Road Corporation was authorized by the legislature to take that route ; nor would such authority to that corporation imply a like authority to the defendants ; the implication would be the other way. The defendants say that this is a court of chancery ; that it is not bound by the strict rules of law ; and that it is to compare the value of the water power with that of the rail road, and decide in favor of the franchise which is the most valuable. If therefore the rail road is to extend from Boston to Albany, the legislature intend that it shall cross the basins ; but if it is to terminate five miles from Boston, then the intention of the legislature is that it shall not cross them. The Court will not adopt this principle of construction.

It is impossible to include the plaintiffs' franchise under the terms, *land and materials ;* consequently no provision is made for compensating them.

SHAW C. J. delivered the opinion of the Court. Several very important questions have been submitted to the Court in the present case, some of which, for reasons which will sufficiently appear, it is not now necessary to decide. An abstract of

33 *

Boston Water Power Co.
*v.*
Boston and Worcester Rail Road Corporation

*Jan. 27th,* 1840.

Boston Wa-
ter Power
Co.
*v.*
Boston and
Worcester
Rail Road
Corporation.

the bill and a general view of the case, and of the questions arising under it, will appear by reference to the report of a former decision, in the same case, upon the preliminary question of jurisdiction.  16 Pick. 512.  The case then came before the Court on a general demurrer, in which all the facts alleged by the plaintiffs were admitted ; and the question was, whether if the plaintiffs held and enjoyed all the rights set forth in their bill, and if without legal authority they had been infringed by the defendants, in the manner therein set forth, the plaintiffs were entitled to relief in a court of equity ; and the Court held that they were.  The question now arising is a very different one, and depends mainly upon the construction and legal effect of the several legislative acts under which the parties respectively claim.  For the purposes of this hearing it is admitted, by the defendants, that the piers, embankments and bridges erected by them in the construction of the Boston and Worcester rail road in and over the full and receiving basins claimed by the plaintiffs, do, to a certain extent, diminish the volume of water which those basins would otherwise contain, and do therefore to some extent impair and diminish the water power to be derived therefrom.  But they insist that this is *damnum absque injuriâ*, that they are legally justified in so laying out the rail road over the basins, that the damage thereby suffered by the plaintiffs is not in consequence of a tort done by the defendants, to be deemed in law or equity a nuisance, or abated as such, but an act done by rightful authority, for which the remedy is by a compensation in damages, to be obtained in the manner provided by law.  This, at present, constitutes the question between the parties.  This is a question involving public and private interests of very great magnitude, and requiring the most mature consideration.  In deciding it, the Court have the satisfaction of feeling that they have derived great benefit from a full, able and ingenious argument, which seems quite to have exhausted the subject.

The first question which we propose to consider is, whether the legislature had the legal and constitutional authority to grant to the corporation created for the purpose of establishing a rail road from Boston to Worcester, the power to lay their road over and across the basins of the plaintiffs, on paying them the

damage sustained thereby, and to keep up and maintain the same.

It is contended on the part of the plaintiffs, and this constitutes one of the main grounds of their complaint, that the legislature had no such authority, because they hold a franchise in and over all the lands, flats and waters included in their full and receiving basins, obtained by a grant from the Commonwealth for a valuable consideration, and that the authority contended for by the defendants would constitute an interference with and an encroachment upon their franchise, amounting in substance and effect, to revocation or destruction of the franchise, and a withdrawal of the beneficial uses of the grant. In order to judge of this, it is necessary to consider the nature and origin of the plaintiffs' rights as claimed and set forth by them, and the manner in which they are affected by the acts of the defendants, supposing them warranted by the act of the legislature.

We do not now stop to inquire into the objections taken by the defendants, that the plaintiffs have not complied with the conditions of the grants made to them, by the act incorporating the Boston and Roxbury Mill Corporation, and the several subsequent acts ; that is a subject of separate and distinct consideration. Supposing them to have complied with those conditions, what are the rights claimed by them ? The plaintiffs were authorized to inclose and pen up a portion of the navigable waters adjoining Boston, so as to prevent the ebb and flow of the tide therein, and to discontinue any further use thereof by the public for purposes of navigation, to make use of part of the public domain, being all that part of the land covered by water lying below low-water mark, or more than 100 rods from high-water mark, and to acquire by purchase or by appraisement, without the consent of the owners, that part of the soil belonging to individuals, and to have the perpetual use thereof for mill purposes, and to make a highway on their dams and take toll thereon. Other rights, no doubt, were incident, but this is a summary of their important rights and privileges.

The effect of the authority granted to the rail road corporation to lay their road over these basins, was to some extent to diminish their surface, and reduce their value. But the

Boston Water Power Co.
v.
Boston and Worcester Rail Road Corporation

Boston Wa-
ter Power
Co.
v.
Boston and
Worcester
Rail Road
Corporation.

Court are of opinion, that this could in no proper legal sense be considered as annulling or destroying their franchise. They could both stand together. The substance of the plaintiffs' franchise was to be a corporation, to establish a highway and take toll, to establish mills, and to make use of land for mill ponds, derived partly from the public and partly from individuals, either by purchase or by taking it, for public use, at an appraisement, by authority of the legislature. So far as this gave them a right to the use of land, it constituted an interest and qualified property in the land, not larger or more ample, or of any different nature, from a grant of land in fee, and did not necessarily withdraw it from a liability to which all the lands of the Commonwealth are subject, to be taken for public use, at an equivalent, when in the opinion of the legislature, the public exigency, or as it is expressed in case of highways, when public convenience and necessity may require it. The plaintiffs still retain their franchise, they still retain all their rights derived from the legislative grants, and the only effect of the subsequent acts, is to appropriate to another and distinct public use, a portion of the land over which their franchise was to be used. We cannot perceive how it differs from the case of a turnpike or canal. Suppose a broad canal extends across a large part of the State. The proprietors have a franchise similar to that of the plaintiffs, to use the soil in which the bed of the canal is formed, and it is, in the same manner, derived by a grant from the legislature. It is a franchise. But if afterwards it becomes necessary to lay a turnpike, or a public highway across it, would this be a disturbance or revocation of the franchise and inconsistent with the power of the legislature in exercising the right of eminent domain, for the public benefit? It might occasion some damage ; but that would be a damage to property, and pursuant to the bill of rights, must be compensated for by a fair equivalent. It may be said, that the way might be carried high over the canal, and so not obstruct it. But suppose a rail road, a new erection, not contemplated when the canal was granted, and from the nature of which, it must be kept on a level, so as to subject the canal proprietors to considerable expense and trouble ; whatever other objections might be made to it, it seems to us, that it could not be considered as a

Boston Wa
ter Power
Co.
v.
Boston and
Worcester
Rail Road
Corporation.

revocation, still less an annihilation of the franchise of the proprietors.

If it is suggested, that under this claim of power, the legislature might authorize a new turnpike, canal or rail road on the same line with a former one to its whole extent, we think the proper answer is, that such a measure would be substantially and in fact, under whatever color or pretence, taking the franchise from one company and giving it to another, in derogation of the first grant, not warranted by the right of eminent domain, and incompatible with the nature of legislative power. In that case the object would be to provide for the public the same public easement, which is already provided for, and secured to the public, by the prior grant, and for which there could be no public exigency. Such a case therefore cannot be presumed.

If the whole of a franchise should become necessary for the public use, I am not prepared to say, that the right of eminent domain, in an extreme case, would not extend to and authorize the legislature to take it, on payment of a full equivalent. I am not aware that it stands upon a higher or more sacred ground, than the right to personal or real property. Suppose, for instance, that a bridge had been early granted over navigable waters, say in this harbour, at the place where East Boston ferry now is, and the extension of our foreign commerce, and the exigencies of the United States in maintaining a navy for the defence of the country, should render it manifestly necessary to remove such bridge ; I cannot say that it would not be in the power of the legislature to do it, paying an equivalent.

Or suppose, as it has sometimes been suggested, that these dams of the plaintiffs, by checking the tide waters flowing through the channels below Charles River bridge, and through the harbour of Boston, should have so far altered the regimen of the stream, as gradually to fill up the main channel of the harbour and render it unfit for large ships ; suppose it were demonstrated, to the entire satisfaction of all, that this was the cause, that the harbour would become unfit for a naval station, or for commerce, by means of which most extensive damage would ensue to the city, to the Commonwealth, and to the eastern States, (for I mean to put a strong case for illustra-

tion,) would it not be competent for the legislature to require the dams to be removed, the basins again laid open to the flux and reflux of the tide? I am not prepared to say that 't would not, on payment of an equivalent. But it is not necessary to the decision of this cause, to consider such a case, because, as before said, the act of the defendants does not, in any legal sense, annul or destroy the franchise of the plaintiffs.

Nor, in the opinion of the Court, is this exercise of power by the legislature, a law impairing the obligation of contracts, within the meaning of the constitution of the United States. A grant of land is held to be a contract within the meaning of this provision ; and such grant cannot be revoked by a state legislature. This was held in regard to the revocation of grants of land by the State of Georgia. *Fletcher* v. *Peck*, 6 Cranch, 87. And yet there can be no doubt, that land granted by the government, as well as any other land, may be taken by the legislature in the exercise of the right of eminent domain, on payment of an equivalent. Such an appropriation therefore is not a violation of the contract by which property, or rights in the nature of property, and which may be compensated for in damages, are granted by the government to individuals.

The rights, by which individuals owning mills are enabled to flow the lands of proprietors of meadows, is essentially of the same character with that of the plaintiffs, and the main difference is, that the former are obtained by the operation of a general law, and the latter by a special act. But in the former case, the mill owners obtain an easement or franchise, not a property in the soil, and that, without and against the consent of the owners, upon high considerations of public expediency and necessity. But it seems to us, that it cannot be successfully maintained, that a rail road, canal or turnpike, could not be laid over such a pond, because it would diminish the capacity of the pond, and proportionably lessen the mill power. *Forward* v. *Hampshire and Hampden Canal Co.* 22 Pick. 462.

It is difficult, perhaps impossible, to lay down any general rule, that would precisely define the power of the government, in the exercise of the acknowledged right of eminent domain. It must be large and liberal so as to meet the public exigen-

Boston Wa-
ter Power
Co.
v.
Boston and
Worcester
Rail Road
Corporation

cies ; and it must be so limited and restrained, as to secure effectually the rights of the citizen. It must depend in some measure upon the nature of the exigencies as they arise, and the circumstances of particular cases. In the present case, the Court are all of opinion, that the rights of the plaintiffs, in the land of the full and receiving basins, are not of such a character as to exclude the authority of the legislature, from taking a small portion of it, for laying out a rail road, it being for another and distinct public use, not interfering with the franchise of the plaintiffs, in any other way than by occupying such portion of this land.

But it is contended that the act in question is not valid, inasmuch as it does not provide a compensation for the damage done to the plaintiffs' franchise. We are however of opinion, that this objection is founded upon the assumption already considered, viz. that the taking of a portion of the land over which the franchise extends is a taking of their franchise. The act does not take away the plaintiffs' franchise, but provides for taking part of the land, in which the plaintiffs have a qualified right of property. This is provided for in the first section of the act of incorporation, which directs that all damage occasioned to any person or corporation, by the taking of such land or materials, that is, land five rods wide, for the purposes aforesaid, shall be paid for, by the said corporation, in the manner thereinafter provided.

It has been held, that these provisions for taking land, and providing for an indemnity, are remedial and to be construed liberally and beneficially, and will therefore extend to leaseholds, easements, and other interests in land, as well as to land held by complainants in fee. *Ellis* v. *Welch*, 6 Mass. R. 246 ; *Parks* v. *Boston*, 15 Pick. 203.

Another ground much relied upon to show that the act is unconstitutional and invalid, is, that the act does not of itself appropriate the specific land taken, to public use, but delegates to the corporation the power of thus taking private property for public use, and therefore, the appropriation, or the right of eminent domain, is not exercised by the competent and proper authority, and that such power cannot be delegated.

This power is certainly one of a high and extraordinary

Boston Wa-
ter Power
Co.
v.
Boston and
Worcester
Rail Road
Corporation.
character, and ought to be exercised with great caution and deliberation. This objection deserves and has received great consideration. On the whole, the Court are of opinion, that the act is not open to this objection. Taking the whole acts of incorporation together, we are of opinion that it sufficiently declares the public necessity and convenience of a rail road, fixes the *termini*, viz. in or near the city of Boston and thence to any part of Worcester in the county of Worcester, in such manner and form as the corporation shall think most expedient Nothing therefore is delegated to the corporation, but the power of directing the intermediate course between the *termini* The question of necessity for public use is passed upon and decided by the legislature. Whether the road goes over the lands of one or another private individual, does not affect that question. So far as the objection is, that the power is delegated to the corporation instead of being exercised by county commissioners or any other public body, it is rather a question of propriety and fitness, than one of power. In the present case we think that the interests of the corporation and those of the public, were so nearly coincident, it being plainly for the advantage of both that the shortest, safest and cheapest route should be chosen, that the power might be safely intrusted to a corporation thus constituted. This mode of exercising the right of eminent domain, is warranted by numerous precedents, both in our own Commonwealth and in most of the other States of the Union.

We are then brought to another and very important inquiry, which is this ; supposing the legislature has a full and constitutional authority to pass an act, empowering the defendants to lay out their rail road over the land used by the plaintiffs, whether they have in fact granted any such power. This must depend upon the construction of the act of incorporation, applied to the subject matter, both of the contemplated rail road, and the existing works of the plaintiffs. The latter contend that their works were contemplated to be works of public utility, and upon that ground they were authorized to take part of the public domain, and under the authority of the legislature, to take the property of individuals, which would have been inadmissible on any other ground. *Boston and Roxbury Mill*

*Dam Corp.* v. *Newman,* 12 Pick. 467. They therefore insist, that as the lands had been already appropriated to public use, by the grant to the plaintiffs, it could not again be appropriated to the defendants by a subsequent act. So far as this affects the power of the legislature, it has already been considered. It was another and distinct public use, growing up after the former appropriation, and which might be reached, without defeating or essentially impairing the public use, to which it had been already applied.

It is therefore a question bearing upon the presumed intent of the legislature. It may be fairly argued, that though there is no limitation of the power of the corporation in terms, still if the legislature had already appropriated a portion of the land lying between the *termini,* to another important public use, and especially if the construction contended for would wholly, or in a great degree, defeat such other important public use, it is not to be presumed that the legislature meant thus to extend the power, and so a limitation might be engrafted, by necessary and reasonable implication, upon the generality of the act.

The terms of the act (*St.* 1831, *c.* 72,) are certainly broad enough to include the power to take this land and pass over the full and empty basins of the plaintiffs. The first section authorizes the corporation to locate, construct and finally complete a rail road, in or near the city of Boston and thence to any part of Worcester. The third section authorizes the president and directors for the time being, by themselves or their agents, to exercise all the powers granted to the corporation for the purpose of locating, constructing and completing the rail road. Their location is to be filed with the county commissioners. The president and directors of this corporation, therefore, are authorized to locate the rail road, between the *termini,* that is, to determine in what particular direction it should pass between the *termini.* To this extent they were to exercise their own judgment. And the Court are of opinion, that there is nothing in the nature of the plaintiffs' public works, or in the public use to which they were applied, and the extent to which that use would be impaired or diminished, by the taking of such part of the land as might be necessary for the location of this rail road, from which the power of locating the

*[margin note:]* Boston Water Power Co. *v.* Boston and Worcester Rail Road Corporation

34

Boston Wa-
ter Power
Co.
v.
Boston and
Worcester
Rail Road
Corporation.

rail road over it, may be presumed to have been restrained by the legislature. Both uses may well stand together, with some interference of the later with the earlier, which may be compensated for by damages. In this respect, therefore, it differs from many of the cases put, where it is asked whether one canal, turnpike, or rail road, may be laid over the same line with a former one. Both cannot stand together, and one must supersede the other. And this shall not be construed to be the intent of the legislature, unless it appears by express words or necessary implication. In this respect, also, this case differs from the case in Gill and Johnson. There the canal and the rail road must necessarily occupy the same identical line, each for a public use ; both could not stand together, and therefore it was decided, that a franchise already granted should not be considered as superseded and taken away by a subsequent legislative act, granting power in general terms.

So, if a power were given in general terms, to lay out a turnpike or rail road between *termini* definitely expressed, such general power ought not to be so construed as to take an arsenal, fort, state-house, or land already appropriated to a highly important public use, which would be defeated by such construction. It would be a question of legislative intent ; and it could not be presumed, that the legislature intended that the power conferred by them should have such an effect, unless it were unequivocally expressed.

It was, however, contended, that the defendants were expressly restrained from building a bridge over the waters of Charles river, and although by a subsequent act they were author ized to build a bridge over Charles river, yet it was limited to be between the Western Avenue and Canal Bridge, and therefore, did not take away the first prohibition, so far as to build over the waters of Charles river, south of the Western Avenue, where they have in fact located the rail road. The words of this fifteenth section are, that nothing contained in this act shall be construed as giving the Boston and Worcester Rail Road Corporation authority to erect a bridge over the waters of Charles river connected with the city of Boston. The natural and obvious meaning of this is, over Charles river, or across Charles river, that is, the bed or body of the river from one

shore to the other, and not along the margin of the river. Any other construction would restrain them from building over a cove or creek adjoining to and connected with the river, which, to many purposes, may be considered the waters of Charles river; but such a restriction, we think, could not have been contemplated. This construction is strengthened by the consideration, that the subject of obstructing the navigation of Charles river, by bridges across the same, had been agitated before the legislature with great earnestness for several years before this act passed.

But there is another view of this subject, which seems quite decisive, which is this ; whether or not the waters over which the rail road has been built, may have been considered the waters of Charles river, before the dams of the plaintiffs were erected, we think they had ceased to be so, and could not have been so considered and intended by the legislature, after they had been penned up and enclosed by these dams, and thus effectually separated from the river, which was done a long time before this act passed. We are, therefore, of opinion, that the prohibition to build a bridge over the waters of Charles river, as used in this act, did not prohibit the defendants from locating their road on these full and receiving basins, by means of a bridge or causeway, but was intended to apply to the waters of Charles river then open to navigation, and mainly to protect that navigation.

The Court are of opinion, upon the whole case, that the legislature had the constitutional power, to a limited extent, to exercise the right of eminent domain over the lands used by the complainants as their full and receiving basins, providing in the act suitable measures for making compensation to the complainants, if they sustained damage thereby ; that the act did make such prov'sion ; that the power of the legislature was well executed, in declaring the general purpose and exigency of appropriating private property for public use, by establishing a rail road within certain *termini* expressed, and by granting to a corporation, established and constituted as the defendant corporation was, the power of determining the particular course and direction of the rail road between those *termini* ; that the defendants were not restrained, by express words, or any

Boston Water Power Co.
v.
Boston and Worcester Rail Road Corporation.

necessary, just, or reasonable implication, from laying out their rail road as they have done, over the basins used by the complainants under their franchise, and therefore, that the averment of the complainants, that the rail road is laid over their basins without any just and lawful authority, and is consequently a nuisance, is not supported.