THE FREMONT, ELKHORN & MISSOURI VALLEY R. R. Co., PLAINTIFF IN ERROR, v. C. L. LAMB, DEFENDANT IN ERROR.

### SAME v. THE SAME.

1. **Railroad: RIGHT OF WAY: DAMAGES.** Damages incident to the taking of land for right of way for a railroad, and for which compensation must be made to the owner, independently of the portion actually appropriated, are the result of facts and circumstances susceptible of proof, and they must be proved before the damages are allowed.

2. **Railroad Companies Required to Fence Track.** By the law of this state railroad companies are required to fence their track against stock running at large, and failing to do so, are liable to the owner of any that may be killed or injured in consequence of the omission.

3. **Track Crossings.** And when requested by the owner of land crossed by the road, the company are required to make and keep in good repair an adequate means of crossing the track.

ERROR to the district court for Stanton County.

*Joy & Wright* for plaintiff in error.

*H. C. Brome* and *John A. Ehrhardt* for defendant in error.

LAKE, J.

The questions presented by the records in these two cases are in all respects the same as we have already considered at this term, in the case of *The Fremont,*

*Elkhorn & Missouri R. R. v. Whalen, ante* p. 585. The course pursued in the examination of witnesses to prove damages by reason of the location of the road, and the character of the testimony, were not materially different. The instructions given to the jury in the three cases were identical. It is unnecessary, therefore, to go over the ground covered by the opinion in the Whalen case, as we have nothing material to add to what is there said.

However, as a fair sample of the evidence which the jury were particularly instructed to consider on the question of damages, we will give the direct examination of a witness in each of these two cases in full. In the first case, in their numerical order, H. C. Davis was called by the defendant in error, and testified as follows:

Q. Are you acquainted with the value of lands in Stanton county—the fair market value?

A. I believe I am fairly acquainted with the value of lands in this vicinity.

Q. Were you acquainted with the fair market value of the south half of the south-east quarter of section 16, T. 22, R. 2 east of the 6th P.M., before the building of the railroad?

A. How long ago?

Q. Immediately before, were you acquainted with the fair market value of that land?

A. I believe I was.

Q. What would be the fair market value of that piece of land before that road was built?

A. About ten or eleven dollars an acre.

Q. How much would that eighty acres of land be worth—not by the acre, but the entire piece, together—before the road was built?

A. About eight hundred and fifty dollars, in my judgment.

40

Q.  What was the fair market value of that piece of land immediately after the railroad had been completed through it?

A.  I should not think that it would sell for more than eight dollars an acre.

Q.  What was the entire tract·worth immediately. after the railroad was completed through it, exclusive of what they took?

A.  I would have to base my opinion in regard to the value of that in consideration of the course the road takes.

Q.  What I want to get at is, the fair market value of the tract at that time, taking everything into consideration.

A.  I should think the remainder of the land would be worth at least, or about, six hundred and forty dollars.

And in the other case J. R. Layton, the first witness after Lamb himself, gave the following on his examination-in-chief on the question of damages:

Q.  Are you acquainted with the value of lands in Stanton county?

A.  To some extent, I am.

Q.  Do you know the value of the piece of land in controversy, that is, the south half of the south-east quarter 34, 24, 3 east, before the railroad company built across it?

A.  Well, I don't know that I would put it over from sixteen to eighteen hundred dollars.

Q.  Do you know what the reasonable market value of the land was?   Answer whether you know that fact.

A.  I believe I do.

Q.  What was it worth before the railroad company built across it?

A.  From fifteen to eighteen hundred dollars.

Q. What was it worth after the railroad company built across it?

A. I should not consider it worth over five hundred dollars.

Q. You have examined the piece of land, have you, and know how the road runs through it?

A. Yes, sir. I have made no particular examination for that purpose though.

Q. You know how the railroad runs across it?

A. Yes, sir.

From what is here given, which is the entire testimony in chief of these two witnesses on the question of damages, and a fair sample of that of all the others, it will be seen that the province of the jury was directly invaded, and the damages estimated by the witnesses in accordance with their own peculiar notions of what caused them. The quantity of land taken in one case was about five acres, worth in the aggregate not to exceed sixty dollars, and in the other six and a half acres, worth not more than a hundred and sixty dollars; yet, according to the several estimates of these witnesses, and with no fact or circumstance beyond the taking of the land stated, the jury were told that the damage done to one tract was two hundred and ten dollars, and in the other from ten to thirteen hundred dollars, the estimated decrease in value in consequence of the road. And this is the character of much of the testimony the jury were specially charged to weigh in making up their verdict.

Damages incident to the taking of land for right of way for a railroad, and for which compensation must be made to the owner, independently of the portion actually appropriated, are the result of facts and circumstances susceptible of proof, and they must be proved before the damages are allowed. If the value of the residue of these two tracts were so greatly re-

duced by reason of the road, this result was for the jury to determine, not from the opinions of the witnesses, but from the legitimate facts and circumstances properly brought to their notice. And the use of witnesses in such a trial is to acquaint the court and jury with these facts and circumstances, but not to measure their effect.

As in Whalen's case above referred to, the cross-examination of witnesses disclosed the fact that some of their estimates were, in part at least, based upon facts and suppositions foreign to the issues, and which ought to have been excluded from the consideration of the jury, such as the presumed inadequacy of a culvert, injuries to property, want of track crossings, etc.

By the law of this state railroad companies are required to fence their track against stock running at large, and, failing to do so, are liable to the owner of any that may be killed or injured in consequence of this omission of duty. Sec. 2, Art. 1, Ch. 72, Comp. Statutes. And when requested by the owner of land crossed by the road they are required to make and keep in good repair one crossway, or other adequate means of crossing the track. Sec. 106, Ch. 16, Comp. Statutes. The want of means for crossing the road, and the watching of cattle to keep them from the danger of passing trains, therefore, being provided for, have no proper place in a trial of the question of damages for the right of way.

For manifest errors in the admission of testimony, as well as in the instructions to the jury, which are pointed out in Whalen's case, the judgment must be reversed and a new trial awarded.

REVERSED AND REMANDED.