## POSTAL TEL. CABLE COMPANY OF UTAH, Respondent, v. OREGON S. L. R. COMPANY, Appellant.

EMINENT DOMAIN—STATUTES—CONSTITUTIONALITY—TELEGRAPH COMPA-
NIES—CONDEMNATION   PROCEEDINGS—PLEADINGS — SUFFICIENCY—
CORPORATIONS—LEGAL EXISTENCE—RAILROAD RIGHT OF WAY—AP-
PROPRIATION—NECESSITY—DISCRETION OF APPROPRIATION—RIGHTS—
EVIDENCE—COMPENSATION—MEASURE OF DAMAGES—AMOUNT.

1. The provision of the eminent domain statute that all proceedings must be brought in the county in which the property or some part thereof is situated is not in conflict with Constitution, article 8, section 5, providing that all civil or criminal business arising in any county must be tried in such county, so as to preclude a telegraph company from bringing an action to condemn a railroad's right of way, which extends through several counties, for the construction of its lines in one of such counties.[1]

2. The complaint in an action by a telegraph company against a railroad company to condemn a right of way for its lines alleged that defendant's property was a railway running between certain named termini within certain counties in the State, and set forth the amount of ground needed for each pole, the distance of the poles from each other, and their distance from the railroad track. *Held*, that such description of the way desired was sufficient.

3. The fact that a telegraph company of another State is interested in a corporation duly organized under the laws of the State to construct a telegraph line, does not affect the latter's right to maintain proceedings to condemn a right of way for its line under Revised Statutes, section 3588, subdivision 8.

4. The corporate existence of a telegraph company, shown to be *a de facto* corporation, will not be inquired into in an action by such company against a railroad company to condemn a right of way for the construction of its lines.[2]

5. Land which is a part of a railroad's right of way, but not used for any purpose and not essential to the enjoyment of such railroad's

---

[1] Irrigation Co. v. McIntyre, 16 Utah 368; 52 Pac. 628.
[2] Marsh v. Mathias, 19 Utah 350; 56 Pac. 1074.

franchise and property, may be appropriated to the use of a duly-incorporated telegraph company for the purpose of constructing and maintaining its lines, since such appropriation is for a more necessary public use.

6. Where a telegraph company makes a bona fide effort to agree with a railroad company on terms for the use of land in its right of way for the construction of the former's lines, and the latter refuses to negotiate, a necessity is shown to exist for the taking of a right of way for the lines, though there may be other land equally available.

7. Where a duly-incorporated telegraph company exercises the power of eminent domain in good faith, and is not guilty of oppression, its discretion in the selection of land will not be interfered with by the courts.

8. A duly-incorporated telegraph company has the power to construct a telegraph line longitudinally on a railroad's right of way, in the absence of legislative authority, where such construction will not materially interfere with the use of such land for railroad purposes.

9. In an action by a telegraph company against a railroad company to condemn a right of way for the construction of its lines, the certificate of the Postmaster-General of the United States, showing the acceptance of the provisions of Act of Congress, July 24, 1866, by which acceptance such companies are given the right to erect lines on all post roads, is admissible in evidence.

10. A telegraph company, seeking to condemn a railroad's right of way for its lines, can not be authorized to enter into possession and construct the lines until it has paid a just compensation therefor, to be ascertained by resorting to the State statutes.

11. Where a railroad company's right of way has been condemned for the use of a telegraph company in constructing and maintaining its lines, the measure of damages is the decrease in the value of such way for railroad purposes.

12. In an action to condemn a railroad's right of way for the use of a telegraph company, evidence to show damages from the added expense of burning grass from such way by reason of the erection of telegraph poles is not admissible, since such damages are too remote.

13. Where a telegraph company has a right to condemn a right of way on the right of way of a railroad, the damages to be paid the railroad company are nominal, since the telegraph company does not interfere with the railroad's right of way.

Decided May 10, 1901.

Appeal from District Court, Salt Lake County.—*Hon. A. N. Cherry*, Judge.

Action by the Postal Telegraph Cable Company of Utah, a corporation, against the Oregon Short-Line Railroad Company, a corporation. From a judgment in favor of plaintiff, defendant appeals.

AFFIRMED.

*P. L. Williams, Esq.*, for appellant.

*Messrs. Powers, Straup & Lippman* for respondent.

HALL, District Judge.—In this case, it appears that on the fourteenth day of July, 1899, certain citizens of Utah, in connection with the assistant superintendent and the general counsel of the Postal Telegraph Cable Company, a corporation organized under the laws of New York, proceeded to organize under the laws of Utah the respondent herein, the Postal Telegraph Cable Company of Utah. Ten per cent. of the capital stock of the Utah corporation was paid in, the money being furnished by the New York corporation. All the requirements of the statutes of Utah relating to the organization of corporations were complied with. The articles of incorporation were duly filed with the county clerk of Salt Lake county, and a certified copy of the same was filed with the Secretary of State of Utah, who issued his certificate, as required by law, certifying that the respondent had complied with the provisions of the statutes and that it was duly incorporated. The directors of the respondent met and formally organized, directed that negotiations be had with appellant for a right of

way to construct a telegraph line along its railroad right of way from Salt Lake City north to the Idaho State line, and adopted a resolution selecting the right of way, and also proceeded to accept the provisions of an act of Congress, approved July 24, 1866, entitled "An act to aid in the construction of telegraph lines and to secure to the government the use of the same for postal and military and other purposes." Failing in its negotiations, respondent commenced this proceeding under the eminent domain act of Utah to condemn a right of way for the purpose of constructing, maintaining, and operating its telegraph line upon the right of way of the appellant longitudinally, from Salt Lake City north, through the counties of Salt Lake, Davis, Weber, Box Elder, and Cache, in this State, to the State line of Utah and Idaho—a total distance of about one hundred miles. In its complaint the respondent set forth the character of the construction of the telegraph line designed, the length of the poles, their size at the base, the depth that they would be planted in the ground, their distance from the railroad track, and the size of the cross-arms upon which wires are proposed to be strung. It was also alleged in the complaint that, when crossing the track of appellant, the wires would be strung high enough for safety, and that on reasonable notice from appellant, when it was necessary, the poles would be moved to such a point as the appellant might designate. The distance of the poles from each other and the amount of ground each would occupy was alleged; the general route and termini were described; the necessity for the taking, and the failure of the parties to come to terms were set forth; and the fact that the telegraph line would not interfere with the appellant's business was stated, as well as other allegations not necessary here to repeat. The defendant demurred to the complaint upon two grounds: (1) That the court has no jurisdiction of the subject-matter of the action, so far as the same is situated outside of Salt Lake

county and within the counties of Davis, Weber, Box Elder, and Cache, respectively; (2) that the complaint does not state facts sufficient to constitute a cause of action. After argument the demurrer was overruled by the lower court, and the appellant answered, denying the incorporation of respondent, and basing its defense principally upon an allegation that the respondent is the agent and under the control of the Postal Telegraph Cable Company of New York, a foreign corporation, which has not the power to exercise the right of eminent domain in this State, and which, through the organization of respondent, is seeking to do by indirection that which it can not accomplish in its own name directly, and that in reality respondent has no separate existence from the Postal Telegraph Cable Company of New York. The case was tried in the district court without a jury, and the court found the issues for the respondent, assessing appellant's damages at $100.

The contention of the appellant that the lower court had no jurisdiction of the subject-matter of the action, so far as the same is included within the counties of Davis, Weber, Box Elder, and Cache, respectively, is not tenable. The thing which is sought by respondent by this proceeding is an entirety. Railroad Co. v. Gough, 29 Kan. 94; Lower Kings River Water-Ditch Co. v. Kings River & F. Canal Co., 60 Cal. 408; Lewis, Em. Dom., sec. 475; St. Louis & C. R. Co. v. Postal Tel. Co., 173 Ill. 530, 51 N. E. 382. The damage which defendant is entitled to is for the whole property, and the cause of action arises in all five counties as a unit. The county lines crossing the right of way of appellant do not destroy the singleness of its use. Neither does it negative the fact that all the land constitutes but one right of way. As is said in Lewis, Em. Dom., sec. 475, in defining what constitutes an entire tract: "In general, it is so much as belongs to the same proprietor as that taken, and is contiguous to it or used together for a common purpose." Our statute upon the sub-

ject of eminent domain provides, among other things, as follows: "All proceedings under this chapter must be brought in the district court for the county in which the property or some part thereof is situated." This provision does not conflict with section 5, article 8, of our Constitution, which provides that "all civil and criminal business arising in any county must be tried in such county." Irrigation Co. v. McIntyre, 16 Utah 368, 52 Pac. 628. As said by this court in the case cited, the words of our Constitution mean "that an action affecting realty shall be tried in the county where the business or the cause arises, or, if the cause of action arises in more counties than one, then in either of said counties." Part of the right of way sought being in Salt Lake county, and being an entirety extending through the other counties named, the respondent under our law clearly had the right to include the whole in one proceeding. By so doing it avoided bringing five different cases in five different courts in five different counties to condemn the identical right of way against the same defendant.

It is objected that the complaint does not so describe the lands or premises which respondent asks to have appropriated to its use that it can be definitely described in a judgment. The complaint asks for a right of way upon the railroad right of way between certain named termini within certain named counties in the state, and describes the amount of ground needed for each pole, the distance of the poles from each other, and their distance from the railroad track. When the object in the condemnation case is to secure a right of way through a farm or legal subdivision, it probably should be described by such subdivision; but this is for a right of way on an established railroad right of way, the locus of which is accurately fixed by survey, of which there are accessible records. It would seem that there can be no difficulty in so framing a judgment, with such description of the land taken, that parties

may know where it is.   A railroad track is a fixed monument.
Lake Shore & M. S. Ry. Co. v. Pittsburg, Ft. W. & C. Ry.
Co., 71 Ill. 40.   From this fixed monument other distances
may be measured, and there does not appear to be any diffi-
culty in locating exactly the line of construction to be followed
by this telegraph company.  The complaint describes the prop-
erty upon which the respondent proposes to locate its telegraph
line as the railway of appellant from Salt Lake City to Cannon
Station, on the state line between Utah and Idaho.   It alleges
that the railroad bed is located near the center of its right of
way, which is not less than one hundred feet in width; that
the railroad track is four feet eight and one-half inches
gauge, and upon the center of the railroad bed; that the tele-
graph line to be constructed will consist of poles thirty feet in
length, planted firmly in the ground at a depth of not less than
five feet, and thirty feet from the outer edge of the railroad
track; that the poles will be erected at a distance of one
hundred and sixty-seven feet from each other on the right of
way; that each pole will be one foot in diameter at the base
and will occupy only one square foot of ground; that no wires
will be attached to appellant's fixtures, nor poles erected upon
embankments, nor will the wires interfere with any other tele-
graph line; that the wires are to be attached to cross-arms high
enough so that they will not interfere with appellant's prop-
erty or business; and that the cross-arms will be eight feet
in length.   This description covers every reasonable intend-
ment of the statute.

It is also insisted by appellant that the respondent is not
a corporation either *de jure* or *de facto*.   The respondent ap-
pears to have complied fully with the laws of Utah.   Its incor-
porators entered into the required articles of agreement.   They
attached the statutory oath.   Ten per cent. of the capital stock
was paid to its treasurer in cash.   The articles were filed with
the county clerk of the proper county.   A certified copy of

the articles was filed with the Secretary of State, and the Secretary of State issued his certificate of incorporation. It has performed corporate acts. It adopted a seal, and its officers have transacted corporate business. . Clearly it is a corporation, and, being such, it is a legal entity. Exchange Bank of Macon v. Macon Const. Co., 97 Ga. 1, 25 S. E. 326; Richmond & I. Const. Co. v. Richmond, N. J. & B. R. Co, 15 C. C. A. 289, 68 Fed. 105, 34 L. R. A. 625. It is a citizen of Utah (Wilson v. Mining Co., 19 Utah, 66, 56 Pac. 300), and by subdivision 8 of section 3588, Revised Statutes, it is granted the right to exercise the power of eminent domain. It may be true that the Postal Telegraph Cable Company of New York is interested in respondent; but that fact does not devest from respondent any of the corporate powers with which it is clothed. There is nothing in the letter, spirit, or policy of the law which prohibits the same persons from forming and conducting two or more different corporations. This same question was before the United States circuit court for the district of Idaho (see Postal Tel. Cable· Co. v. Oregon S. L. R. Co., 104 Fed. 623) in a case upon all fours with the one at bar, and the court said: "The objection is that plaintiff is not a corporation and is not organized in good faith. No one will doubt that the organization of plaintiff was for the purpose of co-operation with the Postal Telegraph Cable Company of New York. It may be said that it is subordinate to the latter, and is to assist it in carying out its objects. It may be nothing more than an agent. This may be said of it more from general circumstances than from the testimony in the case. This, however, is a common procedure with all large corporations. A recent instance is in mind. A railroad company, now operating in North Idaho, desiring to add a branch of about five miles, organized an independent company to build the same; and I think this defendant, in building the branch rail-

road from Nampa to Boise, did the same. It seems not an unusual matter for a large corporation to utilize small corporations for their purpose. If the plaintiff, however, is organized for a fraudulent purpose, the court will not lend its aid in the consummation of any fraud; but this I am unable to find against the plaintiff from the evidence. The facts are that it appears by the record to have organized according to the statutes. It has held corporate meetings and performed corporate acts. It has not built any telegraph line within the territory for which it was organized; but it is for the privilege of doing that in the place it deems most available and best for its use that it is now in this forum. Until it is clearly shown that this organization is based upon fraud, or that it is for some fraudulent purpose, the court must regard it as organized in good faith, and accede to it accordingly the statutory rights accorded it." These views are fully sustained by the following authorities: Cunningham v. City of Cleveland, 39 C. C. A. 211, 98 Fed. 657; Lowler v. Railroad Co., 59 Iowa 563, 13 N. W. 718; Day v. Telegraph Co., 66 Md. 354, 7 Atl. 608; In re New York, L. & W. Ry. Co., 35 Hun 220; Id., 99 N. Y. 12, 1 N. E. 27; Com. v. New York, L. E. & W. R. Co., 132 Pa. 591, 19 Atl. 291; Frost v. Coal Co., 24 How. 278, 16 L. Ed. 637.

However, the authority of respondent to exercise the power of eminent domain can not be considered in this proceeding. While the burden of proving its corporate existence was by the denial in the answer placed upon respondent, it was only necessary that it prove that it was a corporation *de facto*. Dry-Goods Co. v. Box, 13 Utah 629, 45 Pac. 629. Having made such proof, its corporate existence can not be inquired into collaterally. Marsh v. Mathias, 19 Utah 350, 56 Pac. 1074. And this proceeding to condemn a right of way is a collateral proceeding so far as it concerns the question of the corporate existence of respondent. Peoria & P. U. Ry. Co.

v. Peoria & F. Ry. Co., 105 Ill. 110; Wellington & P. R. Co. v. Cashie & C. R. & Lumber Co., 114 N. C. 690, 19 S. E. 646; Turnpike Co. v. Bobb, 88 Ky. 226, 10 S. W. 794; Golden Gate Mill & Min. Co. v. Joshua Hendy Mach. Works, 82 Cal. 184, 23 Pac. 45. And it may be stated as a general rule that the legal existence of a *de facto* corporation can only be questioned by the State in a direct proceeding instituted for that purpose. Reisner v. Strong, 24 Kan. 411; Independent Order of Foresters v. United Order of Foresters, 94 Wis. 234, 68 N. W. 1011; Chicago & N. W. Ry. Co. v. Chicago & E. R. Co., 112 Ill. 601; Mortgage Co. v. Tennille (Ga.) 13 S. E. 158, 12 L. R. A. 529; Stout v. Zulick (N. J. Err. & App.), 7 Atl. 362; Pacific Railroad Removal Cases, 115 U. S. 1, 5 Sup. Ct. 1113, 29 L. Ed. 319; National Docks Ry. Co. v. Central R. Co. of New Jersey, 32 N. J. Eq. 755, 760; Rex v. Corporation of Carmarthen, 2 Burrows 869. In the case of Ward v. Railroad Co., 119 Ill. 287, 10 N. E. 365, the court says: "There is some proof that the petitioner is a corporation *de facto*, and that is all the law requires in this class of cases. There is evidence, although it may be slight, of corporate acts done by petitioner. It appears that an engineer has been appointed, the line of the proposed road has been located, and other steps taken towards the building of the road . . . These are corporate acts, and tend to show that petitioner is a corporation *de facto*." See, also, Colorado E. Ry. Co. v. Union Pac. Ry. Co. (C. C.) 41 Fed. 297; Smith v. Sheely, 12 Wall. 358, 20 L. Ed. 430.

That the telegraph is a public use, and the business of telegraphy is obviously a public business, is well established. It is a quasi-public employment—one not merely exercised for the purpose of private gain, but for the general benefit and welfare of the community. A telegraph company is a public servant, which must serve all alike who make demands upon it, and its right to exercise the power of eminent domain is

recognized by our statutes and by numerous decisions of the courts. Rev. St., sec. 3588, subsec. 8; Joyce, Electric Law, sec. 274; Lewis, Em. Dom., sec. 172. The use, then, to which respondent seeks to apply the land to be condemned is a public use, recognized by law. It is, however, contended that the land sought is already devoted to a public use, and that the condemnation for telegraph purposes will not be devoting it to a more necessary public use. The land which respondent seeks to condemn is not now used for any purpose. Practically it is now idle property, and the new use promises to be one of public utility. The appropriation of the right of way of a railroad not essential to the enjoyment of its franchises and property, for the construction of a telegraph line, is to and for a more necessary public use. Southern Pac. Ry. Co. v. Southern Cal. Ry. Co., 111 Cal. 231, 43 Pac. 602.

It is also argued that no necessity has been shown to exist for the taking of the right of way. But it is shown that the respondent made a bona fide effort to agree with the appellant upon terms for the taking of the land sought, and that the latter refused to consider respondent's proposition or to negotiate with it at all. The necessity, therefore, exists for the taking. It is not a question whether there is other land to be had that is equally available, but the question is whether the land sought is needed for the construction of the public work. The necessity is shown to exist when it appears that it is necessary to take the land by condemnation proceedings in order to effectuate the purposes of the corporation. Railroad Co. v. Kip, 46 N. Y. 553, 7 Am. Rep. 385; Railroad Co. v. Brainard, 9 N. Y. 110. The respondent has the right to determine when and where its telegraph line shall be built. It may be said to be a general rule that, unless a corporation exercising the power of eminent domain acts in bad faith or is guilty of oppression, its discretion in the selection of land will not be interfered with. Railway Co. v. Petty, 57 Ark. 359, 21 S.

W. 884; Englewood Connecting R. Co. v. Chicago & E. I. R.
Co., 117 Ill. 611, 6 N. E. 684; O'Hare v. Railroad Co., 139
Ill. 151, 28 N. E. 923; Stark v. Railroad Co., 43 Iowa 501;
Peavey v. Railroad Co., 30 Me. 498; Fall River Iron Works
Co. v. Oil Colony & F. R. R. Co., 5 Allen, 221; Railroad
Co. v. Stoddard, 6 Minn. 150 (Gil. 92); Dietrichs v. Railroad
Co., 13 Neb. 361, 13 N. W. 624; Railroad Co. v. Speer, 56
Pa. 325; Colorado E. Ry. Co. v. Union Pac. Ry. Co. (C. C.),
41 Fed. 293; New York Cent. & H. R. R. Co. v. Metropolitan
Gaslight Co., 5 Hun 201.    With the degree of necessity or
the extent which the property will advance the public purpose,
the courts have nothing to do.    Tracy v. Railroad Co., 80 Ky.
259; In re New York Cent. & H. R. R. Co., 77 N. Y. 248;
Railroad Co. v. Hooper, 76 Cal. 404, 18 Pac. 599.    When the
use is public, the necessity or expediency of appropriating any
particular property is not a subject of judicial cognizance.
Boom Co. v. Patterson, 98 U. S. 403, 406, 25 L. Ed. 206;
St. Louis H. & K. C. Ry. v. Hannibal Union Depot Co., 125
Mo. 82, 28 S. W. 483.

It is contended by appellant that the respondent had no
power to locate its telegraph line longitudinally upon appel-
lant's right of way, because, when the lands have been once
taken, by virtue of the power of eminent domain or otherwise,
and appropriated to a public use, as is the right of way in con-
troversy, such land can not again be subjected to another pub-
lic use, unless such secondary appropriation be authorized by
the Legislature. The authorities, however, affirm that this rule
only applies when the second public use, by reason of its
nature or character necessarily supersedes or destroys the for-
mer use.    Where, as in this case, the construction of the
telegraph line will not materially interfere with the use of
appellant's land for railroad purposes, it is clear that the rule
does not apply.    Baltimore & O. S. W. R. Co. v. Board of
Com'rs (Ind. Sup.), 58 N. E. 837; Gold v. Railway Co., 153

Ind 232, 53 N. E. 285; Steele v. Empsom, 142 Ind. 397, 41 N. E. 822; Southern Pac. R. Co. v. Southern Cal. Ry. Co., 111 Cal. 221, 43 Pac. 602; Southwestern Telegraph & Telephone Co. v. Gulf, C. & S. F. R. Co. (Tex. Civ. App.), 52 S. W. 106; St. Louis & 'C. R. Co. v. Postal Tel. Co., 173 Ill. 521, 51 N. E. 382. Mr Lewis, in his work on Eminent Domain (section 269), says: "A telegraph line may be established along a railroad right of way, it being no material interference with the use thereof for railroad purposes." And this is undoubtedly the law. A telegraph line, constructed as proposed, will not, in the nature of things, interfere with the operation of appellant's railroad.

The certificate of the Postmaster-General of the United States, showing the acceptance by respondent of the provisions of the act of Congress of July 24, 1866, entitled "An act to aid in the construction of telegraph lines and to secure to the government the use of the same for postal, military, and other purposes," was properly admitted in evidence. By accepting the provisions of this act, respondent is given the right to erect its telegraph lines upon all post roads; and by section 3964 of the Revised Statutes of the United States all railroads are made post roads. But, before respondent can exercise the right thus granted by Congress, it must have fixed and paid to the appellant just compensation for the easement. This is ascertained by resorting to the state law relative to eminent domain. The state law becomes auxiliary to the act of Congress, and provides the method of condemnation and compensation. In other words, a right is given by this act of Congress, and the remedy is furnished by the laws of the State. Postal Tel. Cable Co. v. Southern Pac. R. Co. (C. C.) 89 Fed. 190; Gilmer v. Lime Point, 18 Cal. 229; Postal Tel. Cable Co. v. Morgan's Louisiana & T. R. & S. S. Co., 49 La. Ann. 58, 21 South. 183; Smith v. Drew, 5 Mass. 513; Rogers v.

Bradshaw, 20 Johns. 735-744; Kohl v. U. S., 91 U. S. 373, 23 L. Ed. 449; Suth. St. Const., sec. 399.

It is also claimed that the lower court erred in the rule as to the measure of damages which it adopted.   It is insisted that the value of the property taken should be measured by the most advantageous use to which it could be put.   That rule is undoubtedly correct where one owns property in fee and may put it to any use which he chooses; but it is not the rule, as in this case, where the railroad right of way can only be devoted to railroad uses.   Even though the award be nominal, if the sum awarded is a full and fair equivalent for the thing taken, it is just compensation.   In the case of a railroad company whose right of way is held for railroad purposes, it is not a question as to what the property would be worth to the most advantageous use to which it could be put; but the question is, how much will the land be damaged for railroad purposes by the erection of the telegraph line?   St. Louis & C. E. R. Co. v. Postal Tel. Co., 173 Ill. 508, 51 N. E. 382; Chicago, B. & Q. R. Co. v. City of Chicago, 149 Ill. 457, 37 N. E. 78; Id., 166 U. S. 226, 17 Sup. Ct. 581, 38 L. Ed. 819. The railroad company holds its right of way strictly for railroad purposes, and is restricted in its use of the same for such purposes.   Under this view of the estate which the railroad company has in its right of way, it is difficult to see how the damage from the erection of a telegraph line can be more than nominal.   Evidence was introduced by appellant to show damages from the added expense of burning grass from the right of way by reason of the erection of telegraph poles; but such damages are too remote.   Southwestern Telegraph & Telephone Co. v. Gulf, C. & S. F. R. Co. (Tex. Civ. App.), 52 S. W. 107.   Neither can damages be allowed for imaginary dangers.   Jones v. Railroad Co., 68 Ill. 380; Railroad Co. v. Lamb, 11 Neb. 592, 10 N. W. 493; Chicago & N. W. Ry. Co. v. Town of Cicero, 157 Ill. 48, 41 N. E. 640; Lockie

v. Telegraph Co., 103 Ill. 401. Where, as in this case, a telegraph company has a right under the statutes to condemn a right of way on the right of way of a railroad, the damages to be paid to the railroad company are nominal, inasmuch as the railroad company only owns a right of way, and such a right of way is not interfered with by the telegraph company. Railroad Co. v. Catholic Bishop, 119 Ill. 529, 10 N. E. 372; Hilcoat v. Bird, 10 C. B. 327; Allen v. City of Boston, 137 Mass. 319; In re Albany St., 11 Wend. 149, 25 Am. Dec. 618; Chicago, B. & Q. R. Co. v. City of Chicago, 166 U. S. 258, 17 Sup. Ct. 992, 38 L. Ed. 819.

We find no error in the record, and the judgment of the lower court must be affirmed, with costs.

*Bartch* and *Baskin, JJ.,* concur.