*This opinion is subject to revision before final publication in the Pacific Reporter.*

**2013 UT 25**

In The

# SUPREME COURT OF THE STATE OF UTAH

SCHROEDER INVESTMENTS, L.C.,
*Plaintiff and Appellant,*

*v.*

CLYDE C. EDWARDS, LINDA K. EDWARDS, UTAH DEPARTMENT OF TRANSPORTATION, and DOES 1 through 10,
*Defendants and Appellee.*

No. 20110910
Filed May 3, 2013

Fourth District, Provo Dep't
The Honorable Darold J. McDade
No. 090404414

Attorneys:

Troy L. Booher, Noella A. Sudbury, Wade R. Budge,
Salt Lake City, for appellant

John E. Swallow, Att'y Gen., Brent A. Burnett, Asst. Att'y Gen.,
Salt Lake City, for appellee

JUSTICE LEE authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE DURHAM, and JUSTICE PARRISH joined.

JUSTICE LEE, opinion of the Court:

¶1 The Utah Department of Transportation (UDOT) owns a piece of property used as a detention pond in Provo, on land adjacent to property owned by Schroeder Investments. Schroeder filed a condemnation action, asserting a right to condemn a portion of UDOT's parcel to construct an access road to the development Schroeder planned to build on its property.

¶2 UDOT moved for summary judgment. It invoked the "more necessary public use" provision of the eminent domain statute, which provides that property "already appropriated to

some public use" may not be appropriated for another unless the second public use is "more necessary." UTAH CODE § 78B-6-504(1)(d). Schroeder conceded that UDOT's pond was more necessary than its proposed road. But it sought to invoke an exception to the more necessary public use requirement—a so-called doctrine of "compatible uses," which purportedly allowed the condemnation if the pond and proposed road could coexist. The district court granted summary judgment for UDOT, finding that the uses were incompatible because UDOT's pond left no room for Schroeder's proposed road.

¶3   On appeal, Schroeder challenges the district court's invocation of the more necessary public use doctrine and its refusal to allow an exception under the doctrine of compatible uses. We affirm. Schroeder's version of the compatible use exception is unsupported by our relevant caselaw and incompatible with our eminent domain statute, which leave room for an exception only where property has not yet been dedicated fully to another public use.

I

¶4   Schroeder Investments wanted to construct a self-storage facility on its property just off Interstate 15 in Provo. Though not directly accessible from any public street, Schroeder's property could be reached via a 16.5-foot easement across adjoining land owned by Clyde and Linda Edwards. Provo City development requirements, however, mandated that the self-storage facility be accessible by a road at least 24-feet wide.

¶5   To satisfy this development requirement, Schroeder attempted to purchase a widened easement. When negotiations for the sale ultimately stalled, Schroeder initiated a condemnation action in late 2009.

¶6   During the pendency of that action, UDOT sought to purchase the Edwards property for construction of a detention pond, necessitated by its I-15 CORE highway expansion project. After some negotiation, the sale went through, and UDOT moved forward with its detention pond construction plans. Schroeder subsequently amended its complaint in the condemnation action to include UDOT.

¶7   UDOT immediately moved for summary judgment, asserting the "more necessary public use" doctrine. In response,

Schroeder conceded that UDOT's use was more necessary, but asserted that the "more necessary public use" doctrine was inapplicable due to the "compatible use" exception.

¶8 Under Schroeder's version of this exception, there was no need to determine whether a proposed or existing use was "more necessary" where both uses could peacefully coexist. And although UDOT's detention pond occupied its entire property (other than Schroeder's existing easement), leaving no room for Schroeder's proposed use, Schroeder claimed that the detention pond and its proposed road were still compatible because UDOT could modify its detention pond by moving it so that it would partially occupy a piece of Schroeder's adjoining parcel. Schroeder offered to donate this adjoining property to UDOT and also to compensate it for the cost of modifying the detention pond.

¶9 Despite this offer, the district court granted summary judgment for UDOT. It concluded that UDOT's property had already been fully "appropriated to some public use" (a detention pond) that left no room for Schroeder's proposed road, such that the "more necessary public use" doctrine was applicable and the "compatible use" exception was unavailable. Schroeder appeals. Our review is de novo. *See Bahr v. Imus*, 2011 UT 19, ¶ 15, 250 P.3d 56 ("[T]he appellate court reviews a summary judgment for correctness, giving no deference to the [district] court's decision.").

II

¶10 Schroeder Investments finds fault in the district court's rejection of its version of the compatible use exception. Under Schroeder's version, two uses are treated as compatible if they can coexist—even if the first use occupies the property in full, and even if a condition of their coexistence is payment of compensation.[1] Schroeder claims that its proposed road is compatible with

---

[1] Schroeder also faults the district court for purportedly holding that the compatible use exception is available only where existing and proposed uses are of the exact same type. That was not the basis of the district court's ruling, however. Rather, the court determined that "the proposed Schroeder public use is not compatible with the greater necessary UDOT public use *because* UDOT's use is of full capacity of the land and there is nothing left to condemn." (Emphasis added).

UDOT's detention pond (even though the pond occupies UDOT's property in full) because Schroeder is willing to both (a) donate a piece of its adjoining property so that UDOT can move its detention pond to accommodate Schroeder's proposed road and (b) compensate UDOT for the cost of its modifications. Given this compatibility, Schroeder claims there is no need to prioritize between the uses to determine which is more necessary. We disagree and accordingly affirm.[2] Schroeder's broad, compensation-based formulation of the compatible use exception is unsupported by our caselaw and also runs afoul of the governing statute. As to the public policy grounds proffered by Schroeder in support of his version of compatible use, moreover, we find them insufficient—and rooted in a mistaken understanding of our authority in this field.

## A

¶11 "[T]aken together," Schroeder views two of our cases— *Monetaire Mining Co. v. Columbus Rexall Consolidated Mines Co.*, 174 P. 172 (Utah 1918), and *Postal Telegraph Cable Co. of Utah v. Oregon Short-Line Railroad Co.*, 65 P. 735 (Utah 1901)—as "provid[ing] the foundation" for its version of the compatible use exception. We see these cases differently.

¶12 In each of these two cases, the condemned property was not being used to its full capacity. And it was this point, not the broad compensation-based principle identified by Schroeder, that supported our conclusion in these cases that the proposed and existing uses were compatible. More importantly, it is this same narrow distinction—not the principle of compensation—that allows the "compatible use" exception articulated by those cases to be reconciled with the eminent domain statute's "more necessary public use" requirement, *see* UTAH CODE § 78B-6-504(1)(d).

## 1

¶13 *Monetaire Mining* and *Postal Telegraph* each implemented a version of the compatible use exception that allowed the *unused* portion of a parcel of property dedicated to public use to be taken

---

[2] In so doing, we decline to reach an alternative ground for affirmance proffered by UDOT—that property may be taken only for "a use authorized by law," *see* UTAH CODE § 78B-6-504(1)(a), and that Schroeder's proposed use is not authorized.

and put toward a different public use—even where that use was not more necessary. In *Monetaire Mining*, for example, we held that the plaintiff mining company could condemn an easement that would allow it to share a mining tunnel owned by the defendant mining company. 174 P. at 176. While conceding that the second use was not "more necessary" than the first, we nonetheless upheld the condemnation on that ground that the plaintiff sought "not to appropriate [defendant's] tunnel and to dispossess the latter of its property rights therein or of its use," but rather "to condemn the *unused capacity* of the tunnel." *Id.* (emphasis added). We also noted that if the tunnel had already been used "to its full capacity," there would be "nothing left to condemn" and that in that event the more necessary public use doctrine would foreclose the condemnation because "all that the condemner gets, or can get, is the right to use that which the present . . . owner does not or cannot use." *Id.*

¶14 The same principle was at work in *Postal Telegraph. Postal Telegraph* involved a telegraph company's attempt to condemn a portion of a railroad's existing right of way in order to construct telegraph poles, to be located "30 feet from the outer edge of the railroad track." 65 P. at 736–37. The railroad company sought to challenge this condemnation on the ground that the land was "already devoted to a public use, and that the condemnation for telegraph purposes will not be devoting it to [a] more necessary public use." *Id.* at 738. We rejected this argument on the ground that the "land which respondent seeks to condemn is *not now used for any purpose*" and was "[p]ractically . . . now idle property." *Id.* at 738–39 (emphasis added). Thus, the telegraph lines would "not, in the nature of things, interfere with the operation of appellant's railroad." *Id.* at 739. Given that the "new use promise[d] to be one of public utility," *id.*, we accordingly allowed this unused property to be taken.[3]

---

[3] In fact, it appears that the compatible use exception was unnecessary to our decision in *Postal Telegraph Cable Co. of Utah v. Oregon Short-Line Railroad Co.*, 65 P. 735 (Utah 1901). Because the land was "not essential to the enjoyment of [the railroad's] franchises and property," it seemed apparent that the proposed telegraph line was "to and for a more necessary public use." *Id.* at 739.

¶15 Schroeder seeks to recast these cases in a different light. In Schroeder's view, these cases authorize condemnation whenever the condemner is willing and able to compensate the property owner for modifications necessary to make the uses compatible. We are not persuaded.

¶16 Schroeder is right to note that *Postal Telegraph* mentions compensation, but that mention had nothing to do with the sort of compensation Schroeder has in mind. In *Postal Telegraph*, the proposed use of the property (for telegraph lines) was not the type of use that would interfere at all with the existing use of the property (for the railroad right of way). 65 P. at 737–39. The right of way for the railroad was, after all, 100-feet wide, and the railway was placed in the middle of the right of way. *Id.* at 737. This left substantial room on either side of the track. *Id.* And the telegraph line was to be built a full thirty feet from the edge of the track, on land that was "not now used for any purpose," and in a manner that would "not, in the nature of things, interfere with the operation of appellant's railroad." *Id.* at 737–39.

¶17 Thus, while we noted that the telegraph company was required to provide "just compensation," *id.* at 739, the compensation in question was not a condition or element of a showing of compatible use. It was simply a reflection of the constitutional requirement of just compensation for taking a piece of the railroad's right of way (which of course was compensable property, even if it had not yet been dedicated to a public use). This is not the type of compensation Schroeder has in mind—compensation for modifying an existing public use—and *Postal Telegraph* is accordingly of no benefit to Schroeder's position.

¶18 *Monetaire Mining* is a somewhat closer case, since it both (a) required payment of compensation and (b) indicated that some

---

A federal case cited by Schroeder, *Freeman Gulch Mining Co. v. Kennecott Copper Corp.*, 119 F.2d 16 (10th Cir. 1941), is along the same lines. In *Freeman Gulch*, the "compatible use" exception was likewise unnecessary because there "the facts demonstrate[d] beyond question that the use for which Kennecott [sought] condemnation [was] a more necessary public use than the use to which the property [was] being devoted by Freeman." *Id.* at 20.

modifications might need to be made to the mining tunnel in order to permit joint use. *See* 174 P. at 174, 176. A careful reading of *Monetaire Mining*, however, reveals that the compensation referred to there was compensation for taking the unused tunnel capacity, not compensation for modifications. After all, we noted in our opinion that we would have prohibited the taking in the absence of unused capacity. *Id.* at 176 (explaining that if the tunnel had been used "to its full capacity, then there [would be] nothing left to condemn," such that the condemnation suit could not have proceeded). And presumably, to the extent we thought modifications could make otherwise incompatible uses compatible, we would have permitted them, even where there was no unused capacity. Yet we concluded otherwise, indicating that the compensation referred to was not compensation for modifications but for the taking of property rights (tunnel capacity).

¶19 Moreover, even if *Monetaire Mining* could be read to encompass a broader principle of compensation, it still would not support Schroeder's version of the compatible use exception. *Monetaire Mining* involved a unique statutory provision. That provision specifically allowed "the right of eminent domain [to] be exercised in behalf of . . . any occupancy in common by the owners or possessors of different mines." *Id.* at 174–75 (internal quotation marks omitted). We interpreted this statutory scheme to "expressly grant[]" "the power to condemn rights of way for tunnels," including the right to use them "in common with the owners thereof, when necessary, etc." *Id.* at 175 (internal quotation marks omitted).

¶20 Thus, in *Monetaire Mining* we were required to reconcile (a) specific statutory language clearly contemplating some use in common of mining tunnels with (b) the general more necessary public use requirement.[4] Any suggestion that compensation might substitute for true compatibility accordingly resulted from the

---

[4] To the extent the Tenth Circuit's invocation of the compatible use exception was appropriate in *Freeman Gulch*, 119 F.2d at 19–20, it was on similar grounds. *Freeman Gulch*, like *Monetaire Mining*, involved application of both (a) a statute that contemplated joint use for mining purposes and (b) the general more necessary public use requirement. *See id.* at 19 n.3. Schroeder's reliance on this case is accordingly unavailing.

need to give "all . . . provisions of our statute . . . a fair and reasonable application and effect." *Id.* Schroeder, however, cannot point to any specific statute—like the one in *Monetaire Mining*—suggesting that a road and detention pond should be permitted to coexist. Thus, neither of the governing cases support Schroeder's view that incompatible uses generally can be made compatible by the payment of compensation. Nor could they in light of the clear terms of the eminent domain statute—terms we are not free to override through our caselaw.

### 3

¶21 That statute speaks in unequivocal, categorical terms. It declares that property "already appropriated to some public use" may be appropriated to another public use only *if* "the public use to which it is to be applied is . . . more necessary." UTAH CODE § 78B-6-504(1)(d). Thus, where property has already been *appropriated* to one public use, the statute allows a taking *only* for a *more necessary* public use.[5]

¶22 In light of this requirement, it is one thing to acknowledge a narrow exception allowing a second public use where the first does not fully occupy the property in question—the exception recognized in our caselaw. Such an exception is at least arguably compatible with the statutory text, as in such circumstances it can plausibly be said that there is property that is not "already appro-

---

[5] This statutory requirement also forecloses Schroeder's reliance on *Boston Water Power Co. v. Boston & Worcester Rail Road Corp.*, 40 Mass. (23 Pick.) 360. The *Boston Water* opinion does seem to sanction a broad, compensation-based principle of compatible use—suggesting that multiple uses should be permitted where "[b]oth uses may well stand together, with some interference of the later with the earlier, which may be compensated for by damages." *Id.* at 398. But the case is of limited value because there was no "more necessary public use" doctrine in play in *Boston Water*. Rather, in *Boston Water* the court was required to reconcile conflicting charters given to a hydroelectric power generation company and a railroad. *Id.* at 390–91. That case is thus of little consequence under Utah law. Our statute's "more necessary public use" requirement contemplates prioritization of conflicting public uses (not reconciliation of them, as in *Boston Water*).

priated to some public use." But the statute leaves no room for a version of the exception that would permit a taking even where a parcel had already been appropriated in its entirety—the exception Schroeder advances—because the statute nowhere suggests that compensation is an alternative to compliance with the "more necessary public use" requirement.

¶23  Even if our caselaw *did* sanction the broad exception sought by Schroeder, we would have no choice but to repudiate it. In a case like this one where the statute speaks directly to the issue before us, *supra* ¶¶ 21–22, the statute is supreme. *See I.M.L. v. State*, 2002 UT 110, ¶ 25, 61 P.3d 1038 ("[W]e will not infer substantive terms into the text [of a statute] that are not already there. Rather, [our] interpretation must be based on the language used, and [we have] no power to rewrite the statute to conform to an intention not expressed." (first and fourth alterations in original) (internal quotation marks omitted)). And in such a case, our judicial role is secondary (interpretation), not primary (policymaking). *See Berrett v. Purser & Edwards*, 876 P.2d 367, 370 (Utah 1994) (declining to adopt an interpretation that would have "require[d] us to change the existing language and meaning" of a statutory section because doing so "would constitute judicial legislation and the assumption of powers beyond those of this court"). Our interpretation may not exceed the statutory bounds set by the legislature.

B

¶24  Schroeder's invocation of public policy runs afoul of this same principle. According to Schroeder Investments, the broad exception it advocates furthers the public welfare by maximizing the number of public uses that may be accommodated on an individual parcel of property.

¶25  This argument fails at the threshold, as it misconceives the role of the court. Any request that we override clear statutory text on policy grounds "misperceives the judicial function." *VCS, Inc. v. La Salle Dev., LLC*, 2012 UT 89, ¶ 21, 293 P.3d 290. Given the enactment of the eminent domain statute, "we are no longer tasked with advancing public policy as we see it. We instead must implement the particular balance of policies reflected in the terms of [the] statute. Those terms are the law—even when we might find the policies behind the statute should properly have dictated a different rule." *Id.* ¶ 22 (footnote omitted). Public policy concerns,

however grave, do not deputize this court to ignore the terms of a statute and act legislatively. We are bound by the policy judgments of the legislature—even if we fundamentally disagree with them.

¶26 In any event, Schroeder's policy arguments falter on their own terms, as they fail to account for an important, countervailing consideration. As Schroeder concedes, one of the primary policies underlying the "more necessary public use" provision is the avoidance of serial takings. *See, e.g., Greater Clark Cnty. Sch. Corp. v. Pub. Serv. Co., Ind., Inc.*, 385 N.E.2d 952, 954 (Ind. Ct. App. 1979) ("[A]bsent the prior public use rule, the land could be condemned back and forth indefinitely."). Yet Schroeder's compensation-based version of the compatible use exception opens a wide door to serial takings. Under Schroeder's view, a subsequent taking would always be sustained—so long as the condemner is willing to pay compensation for necessary modifications to an existing use.

¶27 The version of the compatible use exception supported by our caselaw (allowing only the taking of unused property), on the other hand, is subject to an inherent limitation on serial takings: Once property is dedicated to one public use, it can be taken again only if the subsequent public use is more necessary than the first. Schroeder's condemnation runs afoul of this principle, and we accordingly reject it.

## III

¶28 Absent any basis for a compatible use exception in this case, UDOT was entitled to judgment as a matter of law. We accordingly affirm the district court's decision granting summary judgment for UDOT and against Schroeder.

—————